Filed 10/20/16  Certified for Publication 11/10/16 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ISAIAH S., a Person Coming Under the Juvenile Court Law.<br><br>SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AMBER G.,<br><br>    Defendant and Appellant. | D069928<br><br>(Super. Ct. No. NJ13627EFGH) |

APPEAL from an order of the Superior Court of San Diego County, Michael Imhoff, Judge.  Affirmed.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Emily K. Harlan, Deputy County Counsel, for Plaintiff and Respondent.

Amber G. appeals a juvenile court order terminating her parental rights and ordering a permanent plan of adoption for her son, Isaiah S.  Amber contends the juvenile

court: (1) did not ensure the San Diego County Health and Human Services Agency (Agency) complied with the relative placement statute (Welf. & Inst. Code, § 361.3[1]), (2) abused its discretion by not exercising its independent judgment on the issue of relative placement, and (3) erred by not applying the sibling relationship exception to termination of parental rights. We affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Isaiah tested positive for methamphetamine at birth, which led to his removal from Amber's custody and his first dependency case. Amber and Benjamin S., Isaiah's father, admitted to using drugs together in the past. Amber eventually reunified with Isaiah. In 2012, Isaiah sustained injuries to his head and bruises to various parts of his body when Amber left him inadequately supervised and he climbed on a dresser that fell on him. Again, Amber successfully reunified with Isaiah.

In August 2014, the Agency filed a third petition on Isaiah's behalf, alleging he had been exposed to violent confrontations between Amber and her husband, Juan Sr., who was the father of Isaiah's three younger siblings, including Juan. Jr. and two sisters. The petition alleged Juan Sr. had punched Amber in the face while Isaiah was present in the home, had a history of pushing and punching Amber, and stabbed Amber with a knife, causing her to bleed from her abdomen and finger. When Isaiah was taken into protective custody, he had a number of concerning marks and bruises all over his body.

---

[1] Statutory references are to the Welfare and Institutions Code.

2

Isaiah and his three younger siblings were detained at the Polinsky Children's Center. At the time of the jurisdiction and disposition hearing in September 2014, Amber had entered into a domestic violence shelter. The Agency recommended placing the children with Amber on the condition that she remain in a domestic violence shelter or transitional housing program. Juan Sr. requested evaluation of his relatives for placement of his children. The juvenile court authorized an extended visit with the children and Amber on the conditions that she remained in her program, allowed the Agency and minor's counsel access to the children, and complied with a criminal protective order preventing contact with Juan Sr.

In October 2014, the juvenile court made a true finding on Isaiah's petition and continued the contested disposition hearing for further investigation of possibly placing the children with Amber. Thereafter, Amber had contact with Juan Sr. in violation of the criminal protective order and the juvenile court's extended visitation order. The Agency terminated the extended visit and changed its recommendation for disposition to removal of the children from Amber's custody. The juvenile court affirmed the termination of Isaiah's extended visit with Amber.

The Agency started the process of evaluating the paternal grandparents that Juan Sr. had identified for placement of Isaiah's younger siblings. Amber informed a social worker that she had concerns about the paternal grandparents as a placement option. The record indicates the social worker asked Amber about relative placement options, but does not include the outcome of that conversation.

In December 2014, the juvenile court proceeded with disposition and declared Isaiah a dependent of the juvenile court, ordered him removed from Amber's custody, ordered reunification services for Amber, and denied services for Isaiah's father. The juvenile court also found there was not a relative or noncustodial parent who was able and willing to care for Isaiah and ordered him placed in a licensed foster home. The court ordered the parents to disclose to the social worker the names, residences, and any known identifying information of any of Isaiah's relatives.

In July 2015, the Agency reported that Isaiah and Juan Jr. had been placed together in a licensed foster home since November 2014. Isaiah's two younger sisters were placed together in another foster home. The social worker determined Isaiah and Juan Jr. were thriving in their foster mother's home.

During the reunification period, Amber lost touch with the Agency. In her last contact with the social worker, Amber reported she was pregnant with her ninth child. She was no longer participating in reunification services and did not appear or arrived late for visits with her children.

In its six-month review report, the Agency stated Isaiah's maternal uncle and his girlfriend (maternal relatives) in Fresno County expressed an interest in caring for all four children. The maternal relatives visited the children in April and June 2015. Although the children had not seen the maternal relatives in several months, the children warmed to the relatives within minutes of the visits. By the time of the six-month review hearing in July 2015, the maternal relatives had completed their FBI fingerprints and had begun the relative home study evaluation process.

4

Amber informed the Agency she did not want the children placed in the maternal relatives' home at that time. However, regarding the children's concurrent plan, Amber expressed she wanted the maternal relatives to care for all four children if she was unable to care for them. Juan Sr. wanted his parents to care for his three children if he was unable to reunify with them.

Isaiah's foster mother also expressed a desire to adopt Isaiah and Juan Jr. She ensured that both boys' needs were met and was appropriately affectionate with them. The boys referred to their foster mother as "mom" and referred to her house as "home." Both boys had made significant improvements in her care.

The Agency recommended terminating Amber's services and to set a section 366.26 hearing for Isaiah, which placed him on a different track than his siblings. Juan Sr. would continue to receive reunification services for his three children. The Agency filed a corresponding section 388 petition to terminate Amber's services at the six-month review hearing and suspend her visits with Isaiah.

The juvenile court set the section 388 petition for hearing at the same time as the six-month review hearing. In its addendum report in August 2015, the Agency noted it was working to reunify Isaiah's three siblings with Juan Sr. The Agency further noted the maternal relatives had continued to express an interest in having Isaiah placed in their care. The Agency was actively exploring this possibility for adoption.

Amber did not appear for the contested proceedings in September 2015. The parties proceeded by way of a document trial and Amber's counsel did not submit

5

affirmative evidence. During closing argument, Amber's counsel asked the juvenile court not to terminate Amber's services or to suspend her visitation.

In September 2015, the juvenile court granted the Agency's section 388 petition, suspending Amber's visits with Isaiah until further order of the court. The juvenile court also granted the Agency's section 388 petition to terminate Amber's reunification services and adopted the Agency's recommendation to continue Isaiah's placement in a licensed foster home.

Amber filed a section 388 petition requesting reinstatement of her reunification services and visits with Isaiah. After a hearing in December 2015, the juvenile court denied the petition. Approximately one month later, the Agency submitted an assessment report for the section 366.26 hearing. The Agency recommended a permanent plan of adoption for Isaiah. The Agency determined Isaiah was adoptable by his current foster caregiver, who had provided a loving and comforting home environment. The Agency also noted Isaiah had maternal relatives in the Central Valley who were interested in adopting him.

Amber had not responded to the Agency's attempts to contact her leading up to the section 366.26 hearing, but she did appear at the hearing and set the matter for trial. Amber also appeared at the contested section 366.26 hearing in March 2016. During the contested proceeding, the juvenile court received the Agency's reports for the hearing into evidence. The assigned social worker testified at the hearing. She stated she was assigned to Isaiah's case in late 2015 and was familiar with his siblings' cases to the

6

extent they were discussed in Isaiah's court documents. Isaiah had been placed in his current foster home for over one year.

The social worker also testified the maternal relatives had contacted her two or three times, requesting that Isaiah be placed with them. At that time, the social worker understood their home was still in the process of being assessed by the Agency. She thought the home may have been approved by the time of the section 366.26 hearing in March 2016. The social worker believed the maternal uncle intended to adopt Isaiah. The social worker did not know why Isaiah had not been placed in the maternal uncle's home prior to her assignment to the case, other than the home was still in the assessment process. She was aware, however, that the maternal relatives had visited Isaiah three to five times during the past year, including two overnight visits.

According to the social worker, Isaiah's caregiver was willing to continue contact between Isaiah and his siblings. The caregiver was also willing to continue contact between Isaiah and Amber as long as Amber maintained sobriety. Amber had not visited Isaiah since approximately July 2015.

Amber testified that she did not agree with the Agency's recommendation to terminate her parental rights because Isaiah was her son, she loved him, and she did not want Isaiah separated from her and her other children. She wanted Isaiah placed with the maternal uncle if he could not be placed with her.

At the conclusion of the evidence, Amber's counsel asked the juvenile court to place Isaiah with the maternal uncle. Alternatively, she asked the juvenile court not to

terminate Amber's parental rights on the grounds that the beneficial parent-child relationship exception and the sibling relationship exception to adoption applied.

The juvenile court terminated Amber's parental rights and ordered a permanent plan of adoption for Isaiah. The court also designated that Isaiah's current caregiver had prospective adoptive parent status. The juvenile court explained that adoptive placement with the maternal uncle remained a possibility if he were to make that request to the Agency, which was now vested with legal authority to make an adoptive placement decision.

DISCUSSION

I. *Relative Placement*

Amber contends the juvenile court failed to ensure the Agency fulfilled its duty under section 361.3 to properly conduct a relative placement assessment of the maternal relatives. She further contends the juvenile court erred by failing to exercise its independent judgment on the issue of relative placement. We conclude Amber does not have standing to challenge the juvenile court's decision at the time of the section 366.26 hearing to continue Isaiah in his current foster care placement.[2]

"Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal." (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

_____

[2] Amber is not contesting the juvenile court's September 2015 foster care placement order. Instead, she only challenges the court's March 2016 order continuing Isaiah in his current placement and declining to place Isaiah with the maternal uncle.

8

An aggrieved party is one who has a legally cognizable interest that the court's decision has injuriously affected in an immediate and substantial way, not nominal or remote. (*Ibid.*; *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 948.)

When a child is removed from a parent's custody under section 361, the court is required to give preferential consideration to a relative's request for placement. (§ 361.3, subd. (a).) In making this consideration the court shall consider factors, including the wishes of the parent. (§ 361.3, subd. (a)(2).) However, the fact that a parent makes his or her wishes known to the court does not necessarily establish standing for the parent to challenge the court's ruling against the parent's wishes for relative placement. (*In re Carissa G.* (1999) 76 Cal.App.4th 731, 736.)

In *In re K.C.*, the California Supreme Court ruled a father did not have standing to challenge the juvenile court's denial of placement with the child's grandparents because he challenged only the denial of relative placement, not termination of his parental rights. (*In re K.C.*, *supra*, 52 Cal.4th at pp. 237-238.) The high court contrasted this situation with that in *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1053-1054, in which this court held the mother had standing to challenge the denial of a section 388 petition for a change of placement because it could affect the child's permanent plan and her parental rights. In *In re H.G.* (2006) 146 Cal.App.4th 1, 10-11, this court ruled the parent had standing to challenge an order removing a child from her grandparents. The Supreme Court noted that in both of these cases the reviewing court had found the parent had standing to dispute not placing the child with the relative because resolution of the placement issue had the potential to alter the decision to terminate parental rights. (*In re*

9

*K.C.*, *supra*, 52 Cal.4th at p. 238.) The court stated: "From these decisions we derive the following rule: A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*Ibid.*)

Here, placement with the maternal relatives does not advance Amber's argument against terminating parental rights. Although the "placement of a dependent child with relatives can, under certain circumstances, make the termination of parental rights unnecessary" (*In re K.C.*, *supra*, 52 Cal.4th at p. 237), those circumstances do not exist in this case because the maternal relatives were seeking to adopt Isaiah. The record does not suggest, Amber does not contend, and we will not speculate whether the maternal relatives would pursue other options that do not require termination of parental rights if given such an opportunity. (See § 366.26, subd. (c)(1)(A); *In re Esperanza C.*, *supra*, 165 Cal.App.4th 1042, 1054 [where great-uncle and wife were not seeking to adopt, placement would advance an argument against terminating parental rights].)

Further, at the section 366.26 hearing, Amber's counsel requested that the juvenile court place Isaiah with the maternal uncle, who was willing to adopt and provide the permanency that Isaiah needs. *Alternatively*, Amber asked the court not to terminate her parental rights "if the court [was] not inclined [to place Isaiah with the maternal uncle.]" Thus, if the juvenile court had placed Isaiah with maternal uncle, Amber would not have challenged termination of her parental rights. Given that Amber did not seek to challenge termination of her parental rights had Isaiah been placed with the maternal uncle at the

10

time of the section 366.26 hearing, she has failed to show that placement with the maternal uncle advances her argument against termination of parental rights.

Amber contends she has standing to assert her relative placement arguments because "prior to the order terminating her parental rights, . . . placement with the maternal uncle could have preserved her relationship with her son."  We are not persuaded by this argument because prior to the section 366.26 hearing, Amber had specifically informed the Agency that she did not want her children placed with the maternal relatives.  She had lost touch with the Agency, stopped participating in reunification services, and was inconsistent with her visits.  As a result, the juvenile court terminated Amber's reunification services in September 2015.  "[T]he decision to terminate or bypass reunification services ordinarily constitutes a sufficient basis for terminating parental rights." (*In re K.C., supra*, 52 Cal.4th at pp. 236-237.)  Moreover, the situation did not improve because the record reveals that at the time of the section 366.26 hearing in March 2016, Amber could not recall when she last visited with Isaiah, stating only that it was some time in 2015.  According to the social worker, Amber had not visited Isaiah for approximately eight months.  It is unclear how placement of Isaiah with the maternal relatives would have enabled Amber to preserve her relationship with Isaiah and avoid termination of her parental rights.

Amber further argues that "if Isaiah had been placed with relatives in a permanency plan less than adoption, [she] could have worked on and repaired her relationship with her son."  As we have already stated, there is no indication in the record that the maternal relatives would have pursued a permanency plan other than adoptive

11

placement. Moreover, the juvenile court had terminated Amber's reunification services approximately six months before the section 366.26 hearing. "Once a parent's reunification services have been terminated, the parent has no standing to appeal relative placement preference issues." (*In re Jayden M.* (2014) 228 Cal.App.4th 1452, 1460.)

In sum, Amber has not shown that the reversal of the juvenile court's placement decision would advance her argument against terminating parental rights and she does not have standing to challenge relative placement preference issues.

## II. *Sibling Relationship Exception*

Amber argues the court erred by terminating her parental rights because termination would substantially interfere with Isaiah's relationship with Juan Jr. We reject this argument.

Under section 366.26, subdivision (c)(1)(B)(v), if the court finds the child will be adopted within a reasonable time, adoption must be ordered " 'unless the court finds a compelling reason for determining that termination [of parental rights] would be detrimental to the child' because '[t]here would be substantial interference with a child's sibling relationship . . . .' " (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 811.) The purpose of this exception is to preserve long-standing sibling relationships that serve as "anchors for dependent children whose lives are in turmoil." (*In re Erik P.* (2002) 104 Cal.App.4th 395, 404.) The sibling relationship exception contains "strong language creating a heavy burden for the party opposing adoption." (*In re Daniel H.*, at p. 813.) Factors for the court to consider include the nature and extent of the sibling relationship, whether the siblings were raised in the same home, whether they share a close bond and

12

whether continued contact is in the child's best interests, as compared to the benefits of adoption. (*Ibid.*) The court considers the best interests of the adoptive child, not the best interests of other siblings. (*Ibid.*) We apply the substantial evidence standard of review to the court's factual findings regarding the applicability of the sibling relationship exception, "and the abuse of discretion standard to the court's weighing of competing interests." (*In re D.O.* (2016) 247 Cal.App.4th 166, 174.)

Here, the juvenile court found there would not be substantial interference with Isaiah's sibling relationships if he was adopted. Amber contends this finding was based on the faulty premise that Isaiah and Juan Jr. currently lived together. Amber points to a Court Appointed Special Advocate report stating that at the end of 2015, Juan Jr. was placed in the home of a relative of Isaiah's caregiver. Even if Isaiah and Juan Jr. were not living together, substantial evidence supported the court's finding because the record establishes Isaiah's caregiver was committed to maintaining sibling contact. Isaiah continued to see Juan Jr. almost daily.

Amber argues it is unlikely the sibling relationship between Isaiah and Juan Jr. would continue because Juan Jr. would likely be returned to Juan Sr.'s care. Based on the record, Isaiah's foster mother was committed to maintaining the sibling relationship if Juan Jr. was reunified with Juan Sr. Amber, however, contends Juan Sr. would likely frustrate the sibling relationship between Isaiah and Juan Jr. Amber's argument that Juan Sr. would reunify with Juan Jr. and interfere with Isaiah's caretaker's attempts to maintain sibling contact is speculative. (See, e.g., *In re Daisy D.* (2006) 144 Cal.App.4th 287, 293 ["it was anticipated that the minor would be adopted by her paternal grandparents, who

13

intended to maintain contact between the minor and her half siblings. Appellant's assertion that animosity between her and the paternal grandparents would lead to a cessation of sibling visits after the adoption is speculative and unsupported by the record."]; *In re Jacob S*. (2002) 104 Cal.App.4th 1011, 1019 ["The grandparents have said they . . . are open to maintaining ties between [the adoptive children] and their siblings. The grandparents have done so thus far, and there is no evidence they intend to stop once they have adopted [the adoptive children]."]; *In re Salvador M*. (2005) 133 Cal.App.4th 1415, 1422 ["there is nothing in this record to suggest that the brothers' relationship would be terminated, as both [the mother] and the grandmother have indicated they recognize the value of the sibling relationship"].)

In any event, Amber has failed to demonstrate how preserving her parental rights would facilitate Isaiah's sibling relationship with Juan Jr. If Juan Sr. reunified with Juan Jr., as Amber indicates is likely, she could not facilitate visits between Isaiah and Juan Jr. as a result of the criminal protective order preventing her from having contact with Juan Sr., including through any third party other than an attorney. Further, Amber had no visitation with Isaiah since mid-2015.

We also note that the nature of Isaiah's relationship with Juan Jr. does not support application of the sibling relationship exception. While the court found Isaiah and Juan Jr. share a strong bond, the evidence indicates the boys were often physically aggressive with one another. When asked about the source of marks and bruises on his body, Isaiah reported that Juan Jr. had hit him. Amber also reported Isaiah's injuries resulted from Isaiah and Juan Jr. "fighting all the time." Contrary to Amber's argument, the evidence

14

indicates the boys' aggression toward one another was more than typical sibling bickering. Rather, the fighting resulted in significant injuries. Thus, while the boys may have shared a strong bond as result of living together much of their lives, the nature of that relationship was somewhat detrimental to Isaiah's health.

Based on the record, the juvenile court did not abuse its discretion in concluding the benefits to Isaiah from adoption outweighed the benefits of his sibling relationship with Juan Jr. Thus, we reject Amber's argument that the sibling relationship exception to termination of parental rights applies in this case.

## DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


O'ROURKE, J.

15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

In re Isaiah S., a Person Coming Under the Juvenile Court Law.
_____

S.D. COUNTY HEALTH & HUMAN SERVICES AGENCY,
Plaintiff and Respondent,
v.
Amber G.,
Defendant and Appellant.

**D069928**
**San Diego County No. NJ13627**
**San Diego County No. NJ13627E**

THE COURT:

The opinion in this case filed October 20, 2016 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c) the Respondent's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

McCONNELL, P. J.

Copies to:  All parties