Filed 8/19/22  In re V.M. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

|  |  |
|---|---|
| In re V.M., a Person Coming Under the Juvenile Court Law. |  |
|  | D080134 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, |  |
| Plaintiff and Respondent, | (Super. Ct. No. NJ15665) |
| v. |  |
| K.F., |  |
| Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of San Diego County, Michael Imhoff, Commissioner.  Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal for Defendant and Appellant.

Claudia Silva, Acting County Counsel, Caitlin E. Rae, Chief Deputy County Counsel and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

K.F. (Mother) appeals an order terminating her parental rights to her three-year-old son, V.M., and selecting a permanent plan of adoption for him pursuant to Welfare and Institutions Code section 366.26.[1] Mother contends that the juvenile court erred by finding neither the beneficial parent-child relationship exception (§ 366.26, subd. (c)(1)(B)(i)) nor the sibling relationship exception (§ 366.26, subd. (c)(1)(B)(v)) applied to preclude termination of her parental rights. As explained below, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2020, the San Diego County Health and Human Services Agency (Agency) filed a section 300, subdivision (b)(1) petition, alleging that then one-year-old V.M. was at substantial risk of harm due to medical neglect. At the detention hearing, the juvenile court issued an order detaining V.M. in licensed foster care. V.M.'s then four-year-old brother, L.G., initially remained in Mother's care and later moved into his father's home. In late September 2020, the Agency placed V.M. in the maternal uncle's care.

In December 2020, the Agency filed an amended petition, alleging V.M. was at substantial risk of harm because of his parents' medical neglect and their drug use. Subsequently, the court granted the Agency's request to strike the medical neglect allegation, leaving only the drug abuse allegation as its safety concern for V.M.

At the contested jurisdiction and disposition hearing in February 2021, the juvenile court made a true finding on the amended petition's allegation, removed V.M. from his parents' care, and placed him in relative care (i.e., with the maternal uncle), and ordered reunification services for his parents.

---

[1]    All statutory references are to the Welfare and Institutions Code.

2

In its initial report for the six-month review hearing, the Agency recommended that reunification services be extended until the 12-month review hearing. However, in an addendum report for the contested six-month review hearing, the Agency changed its recommendation and requested that the parents' reunification services be terminated and that a section 366.26 permanency planning hearing be set for V.M. The Agency reported that although Mother continued to visit V.M., she had not been making progress with her reunification case plan. At the contested six-month review hearing in October 2021, the court terminated the parents' reunification services and set a section 366.26 hearing.

In its initial section 366.26 assessment report, the Agency recommended that adoption be selected as V.M.'s permanent plan. V.M. had been in the care of his maternal uncle since late September 2020 and had been doing well medically and developmentally. Mother continued to visit V.M. and sometimes brought L.G. along to the visits. Because the maternal uncle lived with the maternal grandmother and other maternal relatives, V.M. was also able to maintain contact with L.G. through his maternal relatives. V.M. enjoyed his visits with Mother and prior to August 2021 had difficulty saying goodbye to her at the end of visits. He called her "mom" and expressed affection toward her. She was attentive to his needs and brought him food and toys. Mother stated that she preferred that the maternal grandmother, rather than the maternal uncle, adopt V.M.

In its addendum report for the contested section 366.26 hearing on March 9, 2022, the Agency described V.M.'s visits with Mother and L.G. since its initial report. V.M. appeared to enjoy those visits. Although he had a positive relationship with Mother, he did not show any distress on separating from her at the end of visits. The Agency believed that any benefit V.M.

would receive from continuing his relationship with Mother would be outweighed by the benefits to him of being adopted by his current caregiver (i.e., the maternal uncle).

At the contested section 366.26 hearing on March 9, the juvenile court admitted in evidence the Agency's reports and Mother's letter stating that she loved V.M. and was capable of providing for him and asking the court to not terminate her parental rights. The court found that V.M. was adoptable and termination of the parents' parental rights would not be detrimental to him. The court further found that Mother had not shown that either the beneficial parent-child relationship or the sibling relationship exception applied to preclude termination of her parental rights. Accordingly, the court terminated the parents' parental rights, selected adoption as V.M.'s permanent plan, and set a post-permanency planning hearing for September 7, 2022. Mother timely filed a notice of appeal, challenging the March 9, 2022 order.

## DISCUSSION

### I

### *Beneficial Parent-Child Relationship Exception*

Mother contends the juvenile court erred by finding at the section 366.26 hearing that the beneficial parent-child relationship exception did not apply to preclude termination of her parental rights.

### A

"If the court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a hearing under section 366.26." (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).) "[W]hen the court orders the section 366.26 hearing, reunification services have been terminated, and the assumption is that the problems that led to

4

the court taking jurisdiction have not been resolved." (*Ibid*.) The purpose of a section 366.26 hearing is to determine and implement the appropriate permanent plan for a dependent child. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) The juvenile court can choose among three permanent plans: adoption, legal guardianship, and longterm foster care. (§ 366.26, subd. (b).) When a child is adoptable, adoption is the preferred permanent plan unless there are countervailing circumstances or adoption is not in the child's best interest. (*In re Heather B.* (1992) 9 Cal.App.4th 535, 546; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 574 (*Autumn H.*).)

At a section 366.26 hearing, it is the parent's burden to show an exception to termination of parental rights. (*In re Fernando M.* (2006) 138 Cal.App.4th 529, 534; *In re Erik P.* (2002) 104 Cal.App.4th 395, 401.) One exception is when the juvenile court finds "a compelling reason" for determining that termination of parental rights would be "detrimental" to the child because the "parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The California Supreme Court has clarified that the "compelling reason" language does not impose on the parent any burden beyond the requirement to show termination of the beneficial relationship would be "detrimental" to the child. (*Caden C.*, *supra*, 11 Cal.5th at p. 635.)

*Caden C.* stated that under section 366.26, subdivision (c)(1)(B)(i), a parent has the burden to show, by a preponderance of the evidence, three things: (1) "regular visitation and contact with the child;" (2) "the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship;" and (3) "terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new,

5

adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) Specifically, in making the determination of whether the beneficial parent-child relationship exception applies, the juvenile court "balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) Because interaction between a child and his or her parent will generally confer some incidental benefit to the child, the parent must prove the child will benefit to such a degree as to overcome the preference for adoption. (*Ibid.*) The beneficial parent-child relationship exception is not established simply by a showing of a parent's frequent and loving contact and relationship with their child. (*In re J.C.* (2014) 226 Cal.App.4th 503, 529 (*J.C.*).) Some of the factors the juvenile court should consider when determining whether the parent-child relationship is important and beneficial are: (1) the age of the child; (2) the portion of the child's life spent in the parent's custody; (3) the positive or negative effect of interaction between the parent and the child; and (4) the child's particular needs. (*Caden C.*, at p. 632; *Autumn H.*, at p. 576.)

On appeal, we apply a hybrid standard in reviewing a juvenile court's determination whether the beneficial parent-child relationship exception applies. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–641; *J.C.*, *supra*, 226 Cal.App.4th at pp. 530–531.) We apply the substantial evidence standard of review to the factual issues of maintenance of regular contact, visitation and the existence of a beneficial parent-child relationship, and the abuse of discretion standard to the determination of whether there is a compelling

reason for finding that termination would be detrimental to the child. (*Caden C.*, at pp. 639-641; *J.C.*, at pp. 530–531.) Under the substantial evidence standard of review, we consider the evidence, and make all reasonable inferences therefrom, favorably to support the court's order and disregard contrary evidence as not accepted by the court as having sufficient veracity or persuasiveness. (*Id.* at p. 640; *In re S.B.* (2008) 164 Cal.App.4th 289, 297–298 (*S.B.*).) Under the abuse of discretion standard of review, we determine whether the juvenile court's decision exceeded the bounds of reason, and, in so doing, we cannot substitute our view for that of the juvenile court. (*Caden C.*, at p. 641; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 (*Stephanie M.*).)

B

In finding that the beneficial parent-child relationship exception did not apply to preclude the termination of Mother's parental rights, the juvenile court stated:

> "[Mother] has been visiting [V.M.] over the course of the dependency up until the beginning of this year. . . . [S]ince the first of the year, [Mother] has had structured, consistent, regular contact and visits with [V.M.]. So I do find that she . . . has carried her burden by a preponderance of the evidence as to the criteria of regular and consistent visits.
>
> "Next, each parent must show that they have a substantial, positive, emotional attachment; the kind of attachment implying that the child would benefit from continuing the relationship.
>
> "[¶] . . . [¶]
>
> "Regarding [Mother], that's a bit more difficult to balance. Since the first of the year the visits between [Mother], again, have been consistent and structured. They're

7

described as appropriate and enjoyable. [V.M.] does recognize [Mother] as his mother.

"However, the evidence is also before the Court that he does not express any separation anxiety. There's no evidence that he inquires of [Mother] in between visits.

"So the Court's conclusion would be that there is a beneficial and positive relationship which [Mother] has established by [a] preponderance of the evidence, but she has not established by [a] preponderance of the evidence that it's the type of attachment that would imply that [V.M.] would benefit from continuing the relationship.

"In arriving at that conclusion, the Court has balanced a number of factors. First, that the visits between [Mother] and the child are structured. She has supervised visits. Second, the attachment that [V.M.] has extends to quite a few family members. His half-sibling, [L.G.], is frequently at the visits. He interacts very well with his half-brother. I believe at least the last visit the cousin was brought, and [V.M.] was happy to see the cousin. He also has contact with other family members.

"So [V.M.] is the beneficiary of a very close extended family, but that does not necessarily [i]nure to [Mother's] benefit. This Court must look to his relationship with [Mother]; and in doing so, I find that she has not carried her burden that it's the type of relationship that he would benefit from continuing.

"Even if it were established that it is the type of benefit, the parent must still establish by a preponderance of the evidence that terminating the attachment would be detrimental to [V.M.] even when balanced against the countervailing benefits of adoption.

"Here [V.M.] is very stable, notwithstanding his medical challenges. He has not progressed beyond supervised visits with [Mother]. So there is a need for a structured constraint or construct in order to facilitate that interaction.

"So I do find that . . . he would not . . . suffer[] such a detriment that when balanced with the benefits of adoption that [Mother] or father carry their burden by a preponderance of the evidence."

C

Mother asserts the juvenile court erred by finding that the beneficial parent-child relationship exception did not apply to preclude termination of her parental rights because: (1) substantial evidence does not support its finding that she did not have a substantial, positive, emotional attachment to V.M. such that he would benefit from continuing the relationship; and (2) the court abused its discretion by concluding termination of that attachment would not be detrimental to the child when balanced against the countervailing benefit of a new, adoptive home. (*Caden C.*, *supra*, 11 Cal.5th at p. 636.)

*Regular contact and visitation*

Mother argues, and the Agency concedes, that there is substantial evidence to support the juvenile court's finding that Mother maintained regular contact and visitation with V.M. and therefore she met the first prong of the beneficial parent-child relationship exception. (§ 366.26, subd. (c)(1)(B)(i).) Based on our review of the evidence, we conclude there is substantial evidence to support such a finding and accept the Agency's concession.

*Beneficial parent-child relationship*

Mother argues, however, that substantial evidence does not support the juvenile court's finding that she did not have a substantial, positive, emotional attachment to V.M. such that he would benefit from continuing the relationship. In so finding, the court first noted that the visits between Mother and V.M. were supervised visits. Second, the court noted that the

9

type of positive attachment that V.M. had with Mother extended to other members of his close extended family (e.g., L.G. and a cousin). Although the court expressly found that V.M. had a "beneficial and positive relationship" with Mother, the court found that it was not a substantial, positive, emotional attachment because he also had similar attachments to other members of his close extended family. We conclude there is substantial evidence to support that finding.

Considering the four factors set forth in *Caden C.* and *Autumn H.*, we note that V.M. was three years old at the time of the section 366.26 hearing and had spent only the first year of his life in Mother's custody before being removed from her care. (*Caden C., supra,* 11 Cal.5th at p. 632; *Autumn H., supra,* 27 Cal.App.4th at p. 576.) Also, although V.M. had positive interactions with Mother during their visits, called her "mom" and was affectionate toward her, V.M. did not express any distress on separation from her at the end of visits and did not inquire about her in between visits. To prove that the beneficial parent-child relationship exception applied, Mother had to show more than frequent contact and a loving relationship with V.M. (*J.C., supra,* 226 Cal.App.4th at p. 529.) Also, although Mother would bring food and toys for V.M. at their visits, the court could reasonably infer that Mother did not meet V.M.'s particular needs other than at their visits. Alternatively stated, the court could reasonably infer that V.M. did not view Mother as a parental figure who provided for his daily needs. Accordingly, we conclude that substantial evidence supports the court's finding that V.M. would not benefit from continuing the relationship with Mother.

To the extent Mother cites evidence or inferences therefrom that would have supported a contrary finding by the juvenile court, she misconstrues

and/or misapplies the substantial evidence standard of review. (*Caden C.*, *supra*, 11 Cal.5th at p. 640; *S.B.*, *supra*, 164 Cal.App.4th at pp. 297–298.)

*Detriment finding*

Mother argues the juvenile court abused its discretion by finding that the termination of V.M.'s relationship with Mother would not be detrimental to him when balanced against the countervailing benefit of a new, adoptive home. (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) In so finding, the court noted that V.M. was very stable, despite his medical challenges, and had not progressed beyond supervised visits with Mother. Contrary to Mother's assertion, the fact that the court considered the stability of V.M.'s placement and the nature of his visits with Mother did not show it improperly considered those factors and weighed the benefits of his placement with the maternal uncle against the benefits of placement with her. (See *Caden C.*, at p. 634.) Rather, the record shows that the court properly considered those factors, along with all other relevant circumstances and evidence, in determining whether V.M would benefit from the continuation of his relationship with Mother.

More importantly, we conclude Mother has not carried her burden on appeal to show that the court abused its discretion by finding that the termination of V.M.'s relationship with her would not be detrimental to him when balanced against the countervailing benefit of a new, adoptive home. Also, in citing evidence and inferences therefrom that would have supported a contrary exercise of the court's discretion, Mother misconstrues and/or misapplies the abuse of discretion standard of review. Under the abuse of discretion standard of review, we determine whether the juvenile court's decision exceeded the bounds of reason, and, in so doing, we cannot substitute our view for that of the juvenile court. (*Caden C.*, *supra*, 11 Cal.5th at p. 641;

11

*Stephanie M.*, *supra*, 7 Cal.4th at pp. 318–319.) Here, Mother argues in conclusory manner that the juvenile court abused its discretion by not considering the detailed facts and circumstances in this case. She further argues that, based on the positive nature of V.M.'s regular interactions with her, the court should have exercised its discretion by finding the detriment of terminating his relationship with her would outweigh the benefit to him of an adoptive home. In so doing, she improperly asks that we substitute our view of the evidence for that of the juvenile court. (*Caden C.*, at p. 641; *Stephanie M.*, at pp. 318–319.)

Based on our review of the evidence, we conclude the juvenile court rationally concluded that the benefits to V.M. of a new, adoptive home would outweigh the detriment to him of termination of his relationship with Mother. In particular, the court considered the Agency's opinion that the beneficial parent-child relationship exception did not apply. Based on the Agency's opinion and the fact V.M. had achieved stability while placed out of Mother's care for over one-half of his life, the court could rationally conclude the permanency and stability that adoption by his current caregiver (i.e., the maternal uncle) would provide him outweighed any benefit to him of continuing his relationship with Mother.

### Conclusion

As discussed above, there is substantial evidence to support the juvenile court's finding that V.M. would not benefit from continuing his relationship with Mother. Also, the court did not abuse its discretion by concluding that the benefits to him of a new, adoptive home would outweigh the detriment to him of termination of his relationship with Mother. Therefore, we conclude the court properly found the beneficial parent-child

12

relationship exception did not apply to preclude termination of her parental rights.  (§ 366.26, subd. (c)(1)(B)(i); *Caden C.*, *supra*, 11 Cal.5th at p. 636.)

## II

### *Sibling Relationship Exception*

Mother contends the juvenile court erred by finding the sibling relationship exception (§ 366.26, subd. (c)(1)(B)(v)) did not apply to preclude termination of her parental rights.  In particular, she argues that V.M. was positively and significantly attached to L.G., his brother, and that the harm to V.M. of interfering with that relationship outweighed the benefits to him of adoption.

### A

Section 366.26, subdivision (c)(1)(B) provides that the juvenile court should not terminate a parent's parental rights if it finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: " . . . (v) [t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."  In making that determination, the juvenile court considers the best interests of the adoptive child and not the siblings.  (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 813.)

In *In re L.Y.L.* (2002) 101 Cal.App.4th 942 (*L.Y.L.*), we described the showing a parent must make to establish the sibling relationship exception, stating:

13

"To show a substantial interference with a sibling relationship the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. . . . To determine the significance of the sibling relationship, the court considers the factors set forth in [now section 366.26, subdivision (c)(1)(B)(v)]. . . .

"Moreover, even if a sibling relationship exists that is so strong that its severance would cause the child detriment, the court then weighs the benefit to the child of continuing the sibling relationship against the benefit to the child adoption would provide." (*L.Y.L.*, *supra*, 101 Cal.App.4th at pp. 952–953, fns. omitted.)

In reviewing the juvenile court's finding that the sibling relationship exception does not apply to preclude termination of a parent's parental rights, we apply a hybrid standard of review. (*In re Isaiah S.* (2016) 5 Cal.App.5th 428, 438 (*Isaiah S.*); *In re D.O.* (2016) 247 Cal.App.4th 166, 174 (*D.O.*).) We apply the substantial evidence standard, as described above, in reviewing the court's finding regarding the existence of a significant sibling relationship the severance of which would be detrimental to the child. (*Isaiah S.*, at p. 438; *D.O.*, at p. 174.) We apply the abuse of discretion standard, as described above, in reviewing the court's conclusion regarding whether the benefits to the child of adoption would outweigh the benefits of continuing a significant sibling relationship. (*Isaiah S.*, at p. 438; *D.O.*, at p. 174.)

B

In finding that the sibling relationship exception did not apply to preclude termination of Mother's parental rights, the juvenile court stated:

14

"The Court does find that [V.M.] has one sibling, [L.G.], who is age five. I believe he is placed with a parent. The Court would find there would not be a substantial interference with [V.M.'s] sibling relationship with [L.G.]. Considering [V.M.'s] long-term emotional interests, ongoing contact would not be in [V.M.'s] best interest as compared to the benefit of legal permanence through adoption.

"In arriving at that conclusion, the Court is mindful that the record does not establish that [V.M.] has lived with [L.G.] as a sibling in the same home for any appreciable period of time, if at all. He does have shared common experiences, which are promoted and encouraged by not only [V.M.'s] caretaker, but by the extended family. And, again, he is the great beneficiary of that familial approach.

"The record does not establish that [V.M.] has an existing close and strong bond [with L.G.]. It is a very significant bond, but, again, his interaction with [L.G.] is within the context of family gatherings or the supervised visits with [Mother]."

C

Mother contends that the juvenile court erred by finding that the sibling relationship exception did not apply to preclude termination of her parental rights because: (1) substantial evidence does not support its finding that there would not be substantial interference with V.M.'s sibling relationship with L.G. if Mother's parental rights were terminated; and (2) the court abused its discretion by concluding the benefits to V.M. would outweigh the benefits to him of continuing his sibling relationship with L.G.

*No substantial interference finding*

Mother argues that substantial evidence does not support the juvenile court's finding that there would be no substantial interference with a sibling relationship (i.e., V.M.'s relationship with L.G.) if Mother's parental rights were terminated. The record shows the juvenile court considered the statutory factors in making that finding, noting that: (1) V.M. had not lived

15

with L.G. as a sibling in the same home for any appreciable period of time, if at all; (2) V.M. had shared common experiences with L.G., which were promoted and encouraged by both V.M.'s caretaker and his extended family; and (3) although V.M. had a very significant bond with L.G. through interactions with him during family gatherings and Mother's supervised visits, V.M. did not have an existing close and strong bond with him.

Contrary to Mother's assertion, there is substantial evidence to support the court's findings regarding each of those factors. On the first factor, although there is some evidence that V.M. and L.G. may have lived in the same residence for a period of time, that evidence was vague as to the exact period of time. Therefore, the court could reasonably infer that the evidence did not show they had lived together for an appreciable period such that V.M. could be deemed to have been raised in the same home as L.G. within the meaning of section 366.26, subdivision (c)(1)(B)(v).

Second, the court found that the evidence showed that V.M. shared common experiences with L.G. Substantial evidence supports that finding. The Agency's reports include the social worker's observations of Mother's visits with V.M., some of which L.G. attended. V.M. referred to L.G. as "JayJay." V.M. enjoyed playing with L.G. when he accompanied Mother to her visits with V.M. and also during visits with extended family members. V.M. also attended L.G.'s football practices and games. Accordingly, we conclude, as Mother asserts, that substantial evidence supports the court's finding that V.M. and L.G. shared common experiences.

Third, substantial evidence supports the court's finding that V.M. did not have an existing close and strong bond with L.G. Although the court noted that V.M. had a very significant bond with L.G. that was formed through interactions with L.G. during family gatherings and Mother's

16

supervised visits, the court could reasonably infer that significant bond did not rise to the level of an existing close and strong bond within the meaning of section 366.26, subdivision (c)(1)(B)(v).  In the context of the sibling relationship exception, an "existing close and strong bond[]" is not necessarily shown by the existence of a "significant" bond with a sibling.  (§ 366.26, subd. (c)(1)(B)(v).)  In any event, that factor was only one of multiple factors the court considered in determining whether there would be a "substantial interference" with V.M.'s relationship with L.G. if Mother's parental rights were terminated.  (*Ibid*.)

Weighing the above section (c)(1)(B)(v) factors, the juvenile court then found that there would be no substantial interference with a sibling relationship (i.e., V.M.'s relationship with L.G.) if Mother's parental rights were terminated.  In so doing, the court implicitly found that V.M. did not have a significant sibling relationship with L.G., the severance of which would be detrimental to him.  (*L.Y.L.*, *supra*, 101 Cal.App.4th at p. 952.)  Based on our review of the record, we conclude substantial evidence supports the court's finding that there would be no substantial interference with V.M.'s sibling relationship with L.G. if Mother's parental rights were terminated.  To the extent Mother cites evidence or inferences therefrom that would have supported a contrary finding by the court, she misconstrues and/or misapplies the substantial evidence standard of review.  (*Isaiah S.*, *supra*, 5 Cal.App.5th at p. 438; *D.O.*, *supra*, 247 Cal.App.4th at p. 174; *S.B.*, *supra*, 164 Cal.App.4th at pp. 297–298.)

### *Detriment finding*

Mother argues the juvenile court abused its discretion by finding that the termination of V.M.'s sibling relationship with L.G. would not be detrimental to him when balanced against the countervailing benefit to him

of a new, adoptive home. The court concluded that ongoing contact with L.G. would not be in V.M.'s best interest as compared to, or when weighed against, the benefit to V.M. of legal permanence through adoption. However, Mother argues only in a conclusory manner that the court should have reached a contrary conclusion (i.e., that the benefit of continuing V.M.'s sibling relationship with L.G. outweighed the benefit to V.M. of adoption). In so doing, she misconstrues and/or misapplies the abuse of discretion standard of review and fails to carry her burden on appeal to show the court abused its discretion. (*Isaiah S.*, *supra*, 5 Cal.App.5th at p. 438; *D.O.*, *supra*, 247 Cal.App.4th at p. 174.) Nevertheless, we conclude the juvenile court did not abuse its discretion by concluding based on the evidence in this case that the benefits to V.M. of adoption would outweigh the benefits to him of continuing his sibling relationship with L.G.[2]

### *Conclusion*

As discussed above, there is substantial evidence to support the juvenile court's finding that there would be no substantial interference with V.M.'s sibling relationship with L.G. if Mother's parental rights were terminated. Also, the court did not abuse its discretion by concluding that

---

[2]    As the Agency asserts, the juvenile court, in concluding that the sibling relationship exception did not apply, could have properly considered evidence showing that it was likely V.M.'s sibling relationship with L.G. would continue even if Mother's parental rights were terminated and V.M. were adopted by the maternal uncle. (Cf. *D.O.*, *supra*, 247 Cal.App.4th at pp. 170, 174–176 [juvenile court properly considered evidence that relative caregiver would continue to facilitate child's visits with siblings].) Because V.M. and L.G. had formed a sibling relationship during visits with Mother and extended family while in the maternal uncle's care, the court could reasonably infer that the maternal uncle would continue to foster the V.M.'s sibling relationship with L.G. even after the termination of Mother's parental rights.

the benefits to him of a new, adoptive home would outweigh the detriment to him of termination of his sibling relationship with L.G. Therefore, we conclude the court properly found the sibling relationship exception did not apply to preclude termination of Mother's parental rights. (§ 366.26, subd. (c)(1)(B)(v); cf. *Isaiah S., supra,* 5 Cal.App.5th at p. 438; *D.O., supra,* 247 Cal.App.4th at p. 174.)

DISPOSITION

The order is affirmed.

IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.


AARON, J.

19