Filed 11/5/25  In re I.M. CA2/2

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re I.M., a Person Coming Under the Juvenile Court Law. | B344029 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>S.C., a Minor, etc.,<br><br>    Appellant. | Los Angeles County Super. Ct. No. 22CCJP03018B |

APPEAL from an order of the Superior Court of Los Angeles County. Cathy J. Ostiller, Judge. Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

This is an appeal from the juvenile court's order terminating Mother Janet M.'s parental rights to minor I.M. at a Welfare and Institutions Code[1] section 366.26 hearing, clearing the way for I.M. to be adopted by his longtime caretaker, Ms. K.

In a separate appeal by Mother, we affirmed the juvenile court's determination that the beneficial parental relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) did not apply. (*In re I.M.* (Oct. 2, 2025, B343804) [nonpub. opn.].)

In this appeal by half sister S.C.,[2] we affirm the juvenile court's determination that the sibling relationship exception (§ 366.26, subd. (c)(1)(B)(v)) is inapplicable.

## BACKGROUND

I.M. is a boy born in December 2019. His father is unknown. I.M. has significant special needs. Through the date of the order appealed, he remained largely nonverbal.

S.C. is I.M.'s half sister. She was born in 2010. S.C. is over nine years older than I.M. In connection with the events described herein, the juvenile court also exercised jurisdiction over S.C. However, her case terminated in October 2024 when

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

[2]     S.C. also purports to join, pursuant to California Rules of Court, rule 8.200(a)(5), Mother's argument in her appeal "that the [juvenile] court erred in finding the beneficial parental-child relationship exception to adoption inapplicable." Even assuming the standards of such joinder have been met (see *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363 [rule 8.200(a)(5) not satisfied by "cursory and unfocused statements"]), we have already rejected Mother's argument and reject it again here for the same reasons.

the court determined the circumstances no longer justified its supervision.

I.M. came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in May 2022, when he was just two and half years old. At the time, he was living in a home with Mother, then 12-year-old S.C., and several other extended family members.

I.M. had recently presented to the hospital with a femur fracture. He was also malnourished and diagnosed with failure to thrive.

The juvenile court initially allowed I.M. to remain in Mother's care with S.C. However, it ordered him detained in October 2022, returned him to mother's care the following month, and ordered him detained again in January 2023. He was placed in foster care and never lived with Mother and S.C. again.

In April 2023, the juvenile court sustained an amended petition against Mother based on allegations she neglected I.M.

I.M. was placed with Ms. K. later in 2023. Ms. K. is an excellent caregiver who provides I.M. stability and love and otherwise meets his needs. She expressed willingness to adopt I.M. if Mother failed to reunify with him.

Mother failed to reunify with I.M. and the juvenile court terminated reunification services.

At the section 366.26 hearing, the evidence showed I.M. was adoptable. However, S.C. attempted to show section 366.26, subdivision (c)(1)(B)(v)'s sibling relationship exception applied.

The record showed I.M. and S.C. had lived in the same home for approximately two and a half years—roughly the first half of I.M.'s life. For the two years preceding the hearing, I.M. had been placed out of their home. This suited S.C. She reported being "happy and prefer[ring] to be alone with Mother."

Though Mother visited I.M. consistently, S.C. joined those visits only sporadically. This was by choice. S.C. "expressed a preference to remain at home, as she ha[d] become comfortable and . . . adjust[ed] to spending time alone. She ha[d] little interest in attending the visits with her mother."

Also, the weekend visits which did not conflict with S.C.'s school—usually Saturday or Sunday at 11:00 a.m.—were too early for S.C.'s taste. She said she would be willing to join "if they could be scheduled for a later time like around the afternoon," but they remained scheduled for the morning. S.C. also declined to join at least one visit in November 2024 because she said it was too cold.

In total, during the two years I.M. was in out-of-home placement, S.C. attended only three visits with him.

Mother testified about these visits and the bond between S.C. and I.M. more broadly. Mother said they each appeared "[v]ery happy" when they saw each other. They would "[p]lay with the ball, run around"; and at the last visit S.C. attended they "brought some bubbles, so [I.M.] was chasing the bubbles with [S.C.]." Mother viewed I.M. as "very close with [S.C.]" and recalled them "sitting together, reading a book, playing whatever it is." But there is also evidence Mother was trying to engineer a meaningful relationship between I.M. and S.C. that did not exist. S.C. reported Mother had told her I.M. asked " 'where is sis?' " at one of the visits S.C. missed. But he could not have said this. At the hearing, Mother admitted she never heard I.M. make a sentence three, or even two, words long.

With this evidence before it, the juvenile court found the sibling relationship exception inapplicable and terminated Mother's parental rights to I.M. In doing so, it expressed "concerns about Mother's credibility."

4

S.C. timely appealed.

## DISCUSSION

### I.    Applicable Law and Standard of Review

At a hearing under section 366.26, the juvenile court must select and implement a permanent plan intended to provide the dependent child a "stable, permanent" home. (*Id.*, subd. (b).) Where there is no probability of reunification with a parent, adoption is the preferred permanent plan. (*Id.*, subd. (b)(1).) For the court to select adoption as the permanent plan, it must find, by clear and convincing evidence, that the child is likely to be adopted if parental rights are terminated. (*Id.*, subd. (c)(1).) Then, in the absence of evidence that a relative guardianship should be considered, or that the termination of parental rights would be detrimental to the child under one of the enumerated exceptions, the court "shall terminate parental rights." (*Id.*, subd. (c)(1)(B)(i)–(vi).) These " 'statutory exceptions merely permit the court, in exceptional circumstances [citation], to choose an option other than the norm, which remains adoption.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 631.)

One such exception is the "sibling relationship" exception. (§ 366.26, subd. (c)(1)(B)(v).) It applies where "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (*Ibid.*) "The sibling bond exception is evaluated from the perspective of the child who is being considered for adoption, not

5

the perspective of that child's siblings." (*In re D.O.* (2016) 247 Cal.App.4th 166, 174.)

The legislator who drafted the sibling relationship exception "anticipated that 'use of the . . . exception "w[ould] likely be rare," ' meaning 'that the child's relationship with his or her siblings would rarely be sufficiently strong to outweigh the benefits of adoption.' " (*In re Daisy D.* (2006) 144 Cal.App.4th 287, 293.) Accordingly, there is a "heavy burden" on the party opposing adoption under the exception. (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 813.) That burden is greater still "when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014.)

"To show a substantial interference with a sibling relationship the [proponent] must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952.) If the court determines termination of parental rights will substantially interfere with the sibling relationship, it must then "weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption." (*Ibid.*)

"We apply the substantial evidence standard of review to review the [juvenile] court's factual findings regarding the applicability of the sibling relationship exception, 'and the abuse of discretion standard to the court's weighing of competing interests.' " (*In re Isaiah S.* (2016) 5 Cal.App.5th 428, 438.)

## II.    Application

First, S.C. fails to acknowledge the standard of review at all. Her argument proceeds as if our review were independent. It is not, and S.C.'s failure to so much as acknowledge the standard

of review, much less argue error through the proper lens, may properly be viewed as a concession of the lack of merit to her appeal. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.)

In any event, there is no error. The trial court found there "is simply no sibling . . . bond []here to protect." Because she bore the burden of proof in the juvenile court, S.C. can show error in this finding only if she demonstrates the evidence compelled a finding in her favor as a matter of law. (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, overruled on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) She fails to do so.

The only evidence supporting the existence of a significant sibling relationship came by way of Mother's testimony. The juvenile court did not find Mother credible. We will not second-guess that determination. (*See In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1453 [credibility determinations are the province of the juvenile court].)

Moreover, even if the burden of proof before the juvenile court had been on DCFS or I.M., there was substantial evidence to support the court's conclusion. S.C. was not interested in visiting I.M., barely ever did, and was content not having him in the home she shared with Mother. This is not the "rare" or "exceptional" case where the relationship was so strong that it would outweigh the benefits of adoption. (See *In re Daisy D.*, *supra*, 144 Cal.App.4th at p. 293; *In re Caden C.*, *supra*, 11 Cal.5th at p. 631.)

In her briefing, S.C. refers to section 16002 and faults DCFS for not addressing it. But S.C. claims no violation of the portion of section 16002 that sets forth the steps an agency should take to facilitate sibling contact in the context of adoptions

involving siblings. (§ 16002, subd. (e).) Instead, she argues section 16002 contains an expression of legislative intent about the relationship between siblings that the juvenile court failed to honor in ordering Mother's parental rights terminated. For the reasons already stated, the juvenile court made a finding sufficient to reject the sibling relationship exception and did not err in doing so.

## DISPOSITION

The juvenile court's order is affirmed.

RICHARDSON, J.

WE CONCUR:

LUI, P. J.

SIGGINS, J.*

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.