Filed 4/13/23  In re Nicholas G. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re NICHOLAS G. et al., Persons Coming Under the Juvenile Court Law. | B319782 |
| | (Los Angeles County Super. Ct. No. 18CCJP04900A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>TIFFANY G. et al.,<br><br>        Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee.  Affirmed in part. Conditionally affirmed in part and remanded with directions.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant Tiffany G.

Caitlin Christian, under appointment by the Court of Appeal, for Defendant and Appellant Robert H.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

_____

Tiffany G., the mother of four-year-old Nicholas G.,[1] three-year-old Elizabeth H. and two-year-old Hope H., appeals the juvenile court's April 6, 2022 orders denying her petition to reinstate family reunification services and terminating parental rights.  Tiffany contends the court erred in denying her petition based on its findings that she had failed to present evidence of changed circumstances and reinstatement of reunification services was not in the children's best interests.  She contends the court erred in terminating parental rights because Nicholas was not likely to be adopted and the sibling-relationship exception to termination of parental rights applied.  Tiffany also contends remand is required because the Los Angeles County Department of Children and Family Services and the juvenile court failed to comply with their duties of inquiry under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.  The Department does not oppose a limited remand for ICWA compliance.

Robert H., the presumed father of all three children, appeals the order terminating his parental rights, joining in Tiffany's arguments to the extent they benefit him.

_____

[1]     The record sometimes refers to Nicholas as Nicholas G. and other times as Nicholas H.  Because the parties identify him as Nicholas G. in their appellate briefs, we do so as well.

We affirm the order denying Tiffany's petition to reinstate reunification services.  We conditionally affirm the order terminating parental rights and remand for the Department and the juvenile court to comply with ICWA and California law.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Dependency Petition for Newborn Nicholas and the Court's ICWA Finding*

In October 2018 Tiffany and Robert pleaded no contest to an amended petition under Welfare and Institutions Code section 300, subdivision (b),[2] alleging they each had a long history of using methamphetamine; both currently used methamphetamine and other illicit drugs; and Tiffany had used illicit substances during her recent pregnancy with Nicholas, resulting in his testing positive for amphetamines at birth, all of which placed Nicholas at substantial risk of serious physical harm.  The juvenile court declared Nicholas a dependent child of the court, removed him from parental custody and ordered family reunification services for Tiffany and Robert, including drug and alcohol programs for both parents with random weekly drug testing.  Visitation was to be monitored.

Tiffany and Robert completed ICWA-020 Parental Notification of Indian Status forms in advance of the initial detention hearing in August 2019, checking the boxes indicating they had no Indian ancestry as far as they knew.  Based on Tiffany's and Robert's denials of any Indian ancestry, the court stated it had no reason to believe Nicholas was an Indian child and found ICWA did not apply.  In its September 6, 2018

---

[2]      Statutory references are to this code unless otherwise stated.

jurisdiction/disposition report, the Department stated Tiffany and Robert had told the social worker during a post-detention interview that Nicholas had no Indian ancestry; he was a "Caucasian" child. Neither the Department nor the court made any further ICWA inquiries as to Nicholas.

2. *Nicholas's Six-month Review Hearing*

At the six-month review hearing on June 2019 (§ 366.21, subd. (e)), the court found a substantial risk to Nicholas's physical safety if he were returned to his parents' custody. The court found Robert's progress in his case plan minimal at best and terminated his family reunification services. The court found Tiffany in partial compliance and continued her services.

3. *Newborn Elizabeth's Detention, a New Dependency Petition and the Court's ICWA Finding*

In August 2019 Tiffany gave birth to Elizabeth. Both Tiffany and Elizabeth had positive toxicology screenings for amphetamines at Elizabeth's birth. Elizabeth was immediately detained, and the Department filed a section 300 petition for her.

In September 2019 the court sustained an amended section 300, subdivision (b), petition, finding Tiffany had a long history of substance abuse; Tiffany used illicit substances while pregnant with Elizabeth; Robert was a daily user of methamphetamine and cocaine; and both parents' substance abuse and failure to protect placed Elizabeth at substantial risk of serious physical harm. The court declared Elizabeth a dependent child of the court and removed her from parental custody. The court granted Tiffany family reunification services, again requiring her to complete a drug program and participate in random weekly drug testing, and denied Robert family reunification services pursuant to section 361.5,

4

subdivision (b)(10).  The court ordered monitored visitation for both parents.

As to ICWA, Tiffany and Robert supplied ICWA-020 forms at Elizabeth's August 2019 detention hearing again indicating they had no Indian ancestry as far as they knew.  Based on those forms, the court found ICWA did not apply.  Although maternal great-aunt Ronalda S. and maternal great-uncle Jesse S. were present at Elizabeth's detention hearing, they were not asked about her Indian ancestry.

### 4. *The 12-month Review Hearing for Nicholas; the Six-month Review Hearing for Elizabeth*

At the March 2020 12-month review hearing for Nicholas (§ 366.21, subd. (f)) and the six-month review hearing for Elizabeth, the court found Tiffany's progress with her case plan insubstantial.  Still, the court continued Tiffany's family reunification services for both children.

### 5. *Hope's Detention at Birth, the Filing of a New Dependency Petition and ICWA Findings*

In August 2020 Tiffany gave birth to Hope and both tested positive for amphetamines.  Hope was immediately detained.  The court found, based on Robert's and Tiffany's new ICWA-020 forms again denying knowledge of Indian ancestry, that ICWA did not apply.

The Department filed a new section 300 petition in August 2020 as to Hope, alleging Tiffany's use of illicit drugs during her pregnancy with Hope, her and Robert's continued substance abuse and failure to protect their children placed Hope at substantial risk of serious physical harm (§ 300, subds. (b), (j).).

6. *The Court's Orders Terminating Tiffany's Family Reunification Services and Setting the Selection and Implementation Hearing for Nicholas and Elizabeth*

In October 2020 the court held the 12-month review hearing for Elizabeth and the 18-month review hearing for Nicholas (§ 366.22). Citing Tiffany's failure to participate consistently in a drug treatment program and her continuing substance abuse, the court terminated Tiffany's family reunification services with Nicholas and Elizabeth and set a selection and implementation hearing pursuant to section 366.26 for both children for February 21, 2021.

7. *The Court's Jurisdiction Findings and Disposition Order Concerning Hope and the Order Setting the Selection and Implementation Hearing for Hope*

The court sustained the new petition as to Hope at the December 2020 jurisdiction hearing (§ 300, subds. (b), (j)). At a March 2021 disposition hearing the court declared Hope a dependent child of the court and removed her from parental custody. The court denied Tiffany and Robert family reunification services pursuant to section 361.5, subdivision (b)(10), (11), (13), and set a selection and implementation hearing for Hope for June 24, 2021. That hearing, along with the selection and implementation hearings for Nicholas and Elizabeth, was continued several times.

8. *Tiffany's Section 388 Petition To Reinstate Her Family Reunification Services After Giving Birth to Jacob*

In November 2021 Tiffany filed a section 388 petition seeking reinstatement of her reunification services. Tiffany's petition alleged she had enrolled in a residential drug treatment center in August 2021 and shortly thereafter gave birth to

6

Jacob H. The Department allowed Jacob to reside with her at the drug treatment facility due to her significant progress in the treatment program.[3] Tiffany submitted evidence of 16 clean drug tests and consistent participation in a 12-step program and counseling.

Tiffany's petition acknowledged Nicholas had been residing in Arizona with Ronalda since his placement with her in December 2019; the court had ordered an evaluation under the Interstate Compact on the Placement of Children (ICPC) for the potential placement of Elizabeth and Hope with Ronalda's granddaughter Kristie L. and the ICPC had recently been approved. However, Tiffany urged the court not to place Elizabeth and Hope in Arizona but to allow them to remain in California, if not in her custody, then at least with an order reinstating her family reunification services.

9. *The April 2022 Hearing on Tiffany's Section 388 Petition and the Selection and Implementation Hearing for All Three Children*

The hearing on Tiffany's section 388 petition and the selection and implementation hearing for all three children was held on April 6, 2022. By that time Elizabeth and Hope had been placed with Kristie; Nicholas remained placed with Ronalda. All three children were thriving in their placements. Kristie wished to adopt Elizabeth and Hope. Ronalda wished to adopt Nicholas.

In support of her petition Tiffany testified that by August 2021 she had finally realized she needed to break her addictive patterns and address her drug addiction for good. She enrolled in the Didi Hirsch residential drug treatment program where she

---

[3] Jacob is not a subject of this appeal.

gave birth to Jacob. She recently completed the program with clean drug tests throughout her stay. Tiffany supported this claim with a letter from her drug treatment counselor, who also related to the court that Tiffany had exhibited a desire to stay sober, set boundaries, hold herself accountable and care for Jacob.

Tiffany explained she was living with Jacob in a sober-living home and hoped to find a new place where she could reside with all her children. She stated she was no longer in a relationship with Robert, although she saw him regularly so that he could visit with Jacob and they could have joint virtual visits with Nicholas, Elizabeth and Hope. Tiffany acknowledged she had left her first sober-living home suddenly, and without notice to anyone, to live with a relative after finding mold in her room. After speaking with a social worker and realizing her mistake, she found a new sober-living facility in February 2022 where she and Jacob were currently residing. Tiffany testified she was eight-months sober and continued to have clean weekly drug tests in her sober-living facility. Tiffany sought custody of her children or, at the very least, reinstatement of family reunification services with Nicholas, Elizabeth and Hope so that they could be a family.

Tiffany also supplied a letter from Laurence Blanchard, a senior pastor and counselor affiliated with her sober-living home. Pastor Blanchard attributed Tiffany's drug abuse to her significant childhood traumas and her misguided effort to numb her pain. However, Pastor Blanchard continued, with the loss of custody of Elizabeth and Hope and the birth of Jacob (Pastor Blanchard did not mention Nicholas), Tiffany realized she needed to change her life. Assisted by her drug program, her sober-living

facility and local church, Tiffany had forged a new drug-free path. Pastor Blanchard was convinced that Tiffany "has put herself on the road to permanent sobriety and that she has demonstrated the commitment and willpower to remain on that road."

Tiffany submitted similar letters from her sponsor at her sober-living facility and from Elizabeth and Hope's former foster parent (a relative) emphasizing Tiffany's recent sobriety, good care of Jacob and commitment to remaining sober and reuniting with all her children.

The children's counsel and the Department urged the court to deny Tiffany's section 388 petition, asserting Tiffany presented "changing circumstances," not "changed circumstances." They reminded the court Tiffany had used methamphetamine since she was a teenager and during all four of her pregnancies; she had begun treatment several times in the past while her three older children were under court supervision, only to return to using methamphetamine; and she recently abruptly left one sober-living facility without notifying the Department. Although Tiffany acknowledged suffering from depression, she had taken herself off her medication without medical supervision and was not in counseling other than services she received in her sober-living home. Most importantly, they argued, her recent eight-month sobriety in a structured sober-living environment was too recent and too tenuous to risk upsetting the stability the children had gained in relative placements with their prospective adoptive parents. None of the children had ever lived with Tiffany; all three had developed a parental bond with their prospective adoptive parents; and Ronalda and Kristie had stated they planned to ensure all three children would remain in each other's lives.

The court denied Tiffany's section 388 petition, finding her recent sobriety signified "changing, but not changed" circumstances. The court also found reinstatement of family reunification services was not in the best interests of Nicholas, Elizabeth or Hope. In addition, observing Robert had not addressed his drug issues at all, the court expressed its concern that Tiffany's unwillingness to eliminate Robert from her life until he addressed his own drug addiction placed Tiffany's own fragile sobriety at risk.

Proceeding directly to the selection and implementation hearing, the court terminated Tiffany's and Robert's parental rights over all three children, finding no exception to termination applied. As to the sibling-bond exception that Tiffany raised, the court responded that the children's prospective adoptive parents, who were also relatives, articulated a desire to maintain a family bond among Elizabeth, Hope and Nicholas. In any event, the court found, "[A]ny risk of loss of ongoing contact with the children and their siblings [wa]s outweighed by the long-term benefit to the children from the permanency and stability of adoption."

## DISCUSSION

1. *Section 388 and Standard of Review*

Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstance and demonstrates modification of the previous order is in the child's best interest. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Alayah J.* (2017) 9 Cal.App.5th 469, 478; see *In re Zacharia D.* (1993) 6 Cal.4th 435, 447 ["'[s]ection 388 provides the "escape mechanism" that . . . must be built into the process to

10

allow the court to consider new information'"]; Cal. Rules of Court, rule 5.570(e).) "'"'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child." [Citation.] "[T]he change in circumstances must be substantial."'"" (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122-1123; accord, *In re J.M.* (2020) 50 Cal.App.5th 833, 845.)

When, as here, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interests. (*In re Stephanie M., supra,* 7 Cal.4th at p. 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*; *In re Malick T., supra,* 73 Cal.App.5th at p. 1123; *In re Jacob P.* (2007) 157 Cal.App.4th 819, 828.) Nonetheless, a parent may rebut the presumption that continued care is in the best interest of the child after termination of reunification services by showing that circumstances have changed and would warrant further reunification services. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)

"[B]est interests is a complex idea" that requires consideration of a variety of factors. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530; see *In re Jacob P., supra,* 157 Cal.App.4th at pp. 832-833.) In determining whether a section 388 petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case, including factors such as the seriousness of the reason leading to the child's removal, the reason the problem

11

was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner.  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616; *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446-447; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.)

If the juvenile court has ruled the parent failed to carry his or her initial burden to demonstrate new evidence or changed circumstances, the first step of the analysis, the question for the reviewing court is whether that finding is erroneous as a matter of law.  (See *In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1194 ["where the issue on appeal turns on a failure of proof at trial, 'the question for the reviewing court [becomes] "whether the evidence compels a finding in favor of the appellant as a matter of law"'"]; *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1156 [same].)  We review the court's best-interest finding for abuse of discretion and may disturb the exercise of that discretion only in the rare case when the court has made an arbitrary or irrational determination.  (*In re Stephanie M., supra,* 7 Cal.4th at pp. 318-319; *In re I.B.* (2020) 53 Cal.App.5th 133, 153.)  We do not inquire whether substantial evidence would have supported a different order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court.  (*In re Stephanie M.*, at pp. 318-319.)

2.  *The Court Did Not Err in Denying Tiffany's Section 388 Petition Seeking Reinstatement of Reunification Services*

Tiffany contends, and we agree, the court misapprehended Tiffany's initial burden when it found Tiffany had presented "changing" but not "changed" circumstances.  Section 388, subdivision (a)(1), authorizes a parent to seek a modification of a court order "upon grounds of change of circumstance or new

evidence[.]" Tiffany presented new and substantial evidence of a change of circumstance—her eight-month sobriety following completion of a residential drug treatment program and her relocation to a sober-living residence with Jacob. The court's emphasis on the recent, and still-tenuous, nature of Tiffany's sobriety was properly directed to the second prong of the section 388 analysis—whether a new order reinstating reunification services with Nicholas, Elizabeth and Hope was in the children's best interests. (See generally *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 221; *In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

As to that second prong, the court did not abuse its discretion in determining reinstatement of reunification services would not be in any of the children's best interests. Although Tiffany presented glowing reports of her recent sobriety, which the court credited, the court also emphasized Tiffany's long-standing drug addiction and the very recent nature of her rehabilitation and expressed concern over her ability to maintain it outside the structured environment of her sober-living facility, especially when Robert, who had not addressed his drug addiction, remained a constant presence in her life. The court also observed that Nicholas, Elizabeth and Hope were each detained at birth, had never lived with Tiffany and had no meaningful relationship with her. In contrast, all three were thriving in the care of their prospective adoptive parents with whom they shared a parental bond. Considering all the circumstances, the court found that jeopardizing the children's stability by reinstating family reunification in the hope that Tiffany's recent sobriety would continue was not in any of the

children's best interests.  That finding, amply supported by the record, was well within the court's discretion.

> 3.  *The Court Did Not Err in Terminating Parental Rights*

The express purpose of a section 366.26 hearing is "to provide stable, permanent homes" for dependent children. (§ 366.26, subd. (b); see *In re Christopher L.* (2022) 12 Cal.5th 1063, 1076 [the selection and implementation hearing "'is designed to protect children's 'compelling rights . . . to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child'"'"].) The question at the hearing is not "'whether the child should be returned to the parent, an issue already decided in the negative with the permanent plan of return to the parent having been rejected,'" but "'whether the child is adoptable and what the alternative permanency plan should be.'" (*In re Christopher L.*, at p. 1076; accord, *In re Caden C.* (2021) 11 Cal.5th 614, 630-631.)

The legislative preference at this critical stage is for adoption.  (§ 366.26, subd. (c)(1); *In re Caden C., supra,* 11 Cal.5th at p. 630; *In re Celine R.* (2003) 31 Cal.4th 45, 53.)  If the court finds by clear and convincing evidence that it is likely the child will be adopted within a reasonable time and none of the six statutory exceptions to termination and placement for adoption contained in section 366.26 applies, the court must terminate parental rights and order the child placed for adoption. (§ 366.26, subd. (c)(1); *In re Caden C.,* at p. 630.)

> a.  *The court properly found Nicholas was likely to be adopted within a reasonable time*

Tiffany contends there was no substantial evidence Nicholas was likely to be adopted (see *In re J.W.* (2018) 26 Cal.App.5th 263, 267 [we review the court's adoptability

14

findings by clear and convincing evidence for substantial evidence]), emphasizing that, at the time of the selection and implementation hearing, Nicholas had begun exhibiting certain behavioral symptoms and was scheduled to be evaluated for autism spectrum disorder.

Contrary to Tiffany's suggestion, that Nicholas may be diagnosed with autism spectrum disorder does not make him unlikely to be adopted. (See *In re J.W., supra,* 26 Cal.App.5th at pp. 268-269 ["Very few children in the dependency system are without problems. To deny [a child] the chance to permanently become a member of a family that loves him and that he loves, simply because he has special needs, would derail the entire concept of permanent planning"].) Moreover, Ronalda, well aware of Nicholas's behavioral challenges, has never identified them as an obstacle to adoption or wavered from her desire and commitment to adopt him. That alone is substantial evidence to support adoptability. (See *In re Mary C.* (2020) 48 Cal.App.5th 793, 803-804 [that a prospective adoptive parent has expressed interest in adopting the child is, alone, substantial evidence that a child is likely to be adopted within a reasonable time]; *In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649-1650 ["[u]sually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor"].)

Tiffany's related claim that Ronalda was disqualified from obtaining ICPC foster care approval for adoption, leaving Nicholas unlikely to be adopted by her, is also without merit. Even if we credited Tiffany's questionable argument that Ronalda's ability to adopt had some relevance to the question of

15

Nicholas's adoptability (see *In re Sarah M., supra,* 22 Cal.App.4th at p. 1650 [the issue of adoptability focuses on the child, not the prospective adoptive parent; "a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*"]), a careful reading of the record shows no such legal impediment to Ronalda's adoption of Nicholas. Although the Department expressed some early concern whether Ronalda was required to obtain ICPC foster care approval in Arizona to adopt Nicholas and recommended (and Ronalda agreed to) legal guardianship as a back-up alternative, the Department clarified on March 21, 2022, in advance of the selection and implementation hearing, that Ronalda needed only to obtain ICPC approval for adoption by a relative caregiver, for which she indisputably qualified. Ronalda could begin the ICPC approval process once parental rights had been terminated. Tiffany has not demonstrated any error in the court's adoptability findings.

b. *The court did not err in finding Tiffany had not established the sibling-relationship exception*

As discussed, at the section 366.26 hearing, the focus shifts from family reunification to selection and implementation of a permanent plan for the child. If adoption is likely, the court must terminate parental rights and free the child for adoption barring applicability one of six statutory exceptions to termination enumerated in section 366.26. (*In re Christopher L., supra,* 12 Cal.5th at p. 1076; see *In re Celine R., supra,* 31 Cal.4th at p. 53 ["court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that

16

termination of parental rights would be detrimental to the child"]; see also *In re Caden C., supra,* 11 Cal.5th at pp. 630-631 ["if the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan"].)  The statutory exceptions are applicable only in "exceptional circumstances"; adoption remains the norm.  (*Id.* at p. 631 ["'[t]he statutory exceptions merely permit the court, in exceptional circumstances [citation], to choose an option other than the norm, which remains adoption'"]; *In re Celine R.*, at p. 53 [same]; see *In re Matthew C.* (1993) 6 Cal.4th 386, 392 [when a child is adoptable and the court finds that declining to apply one of the statutory exceptions would not cause detriment to the child, the decision to terminate parental rights is relatively automatic].)

The sibling-relationship exception to termination of parental rights and placement for adoption applies when the juvenile court concludes there would be "substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."  (§ 366.26, subd. (c)(1)(B)(v).)

"The purpose of the sibling exception is to preserve long-standing sibling relationships that serve as 'anchors for dependent children whose lives are in turmoil.'"  (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 781; accord, *In re*

*Isaiah S.* (2016) 5 Cal.App.5th 428, 437.) "'To show a substantial interference with a sibling relationship the parent [or sibling granted standing] must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship.'" (*In re Elizabeth M.*, at p. 781; accord, *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952.)

If the court finds a significant sibling relationship exists and would be upended by terminating parental rights and adoption, then the court must "balance the beneficial interest of the child in maintaining the sibling relationship, which might leave the child in a tenuous guardianship or foster home placement, against the sense of security and belonging adoption and a new home would confer." (*In re L.Y.L., supra,* 101 Cal.App.4th at p. 951; accord, *In re Elizabeth M., supra,* 19 Cal.App.5th at p. 781; *In re D.M.* (2012) 205 Cal.App.4th 283, 293.)

The parent has the burden of proving the statutory exception applies. (*In re Caden C., supra*, 11 Cal.5th p. 625; *In re Elizabeth M., supra,* 19 Cal.App.5th at p. 781.) The court's decision a parent has not carried this burden may be based on either or both of two component determinations—whether a beneficial sibling relationship exists and whether the existence of that relationship constitutes "a compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1)(B); see *In Elizabeth M.*, at pp. 781-782.)

18

We review the juvenile court's finding the parent has not established the existence of the requisite beneficial relationship under the substantial evidence standard. (See *In re Caden C.*, *supra*, 11 Cal.5th at pp. 639-640.) When the juvenile court concludes the benefit to the child derived from preserving the sibling relationship is not sufficiently compelling to outweigh the benefit achieved by the permanency of adoption, we review that determination for abuse of discretion. (See *Id.* at p. 640; *In re Elizabeth M.*, *supra*, 19 Cal.App.5th at p. 782.)

Implicitly acknowledging none of the children shared a sibling bond with Jacob, Tiffany contends there was a beneficial sibling relationship between Nicholas, on the one hand, and his sisters, on the other hand, that would be disrupted to their detriment by the termination of parental rights. Although Nicholas had never lived with his sisters, Tiffany maintains they saw each other and Nicholas had even referred to Hope as "his baby." Tiffany contends the court ignored this evidence when it found no sibling bond existed and failed to reach the question whether adoption would be detrimental to the sibling relationship.

Although Nicholas and his sisters apparently enjoyed each other's company, there was little, if any, evidence of an actual sibling bond between Nicholas, one the one hand, and either of his sisters, on the other, let alone evidence that it would be detrimental to any of them to sever that relationship. Even if there were a sibling bond, the court found Ronalda's and Kristie's own familial relationship, together with their express commitment to ensuring the children remained in each other lives, made it unlikely that termination of parental rights would interfere with the siblings' relationship. (See *In re D.O.* (2016)

19

247 Cal.App.4th 166, 176 [juvenile court properly considered caregiver's assurance of future sibling visits when determining sibling-relationship exception did not apply]; see also *In re Celine R., supra*, 31 Cal.4th at p. 55 ["[w]hen appropriate, court can encourage the adoptive parents to agree to visits among the siblings"].)

And, even if Tiffany could establish a beneficial sibling relationship between Nicholas and his sisters that would be disrupted by termination of parental rights, the court found any benefit from preserving that relationship was substantially outweighed by the benefits of the permanency and stability each of the children would gain from adoption, the very finding Tiffany asserts the court did not make. That finding was well within the court's discretion. Simply stated, Tiffany has not demonstrated hers was the "exceptional case" where the stability and permanency of adoption is outweighed by the benefits of preserving the sibling relationship. (*In re Caden C., supra,* 11 Cal.5th at p. 631; see generally *In re Daisy D.* (2006) 144 Cal.App.4th 287, 293 ["[t]he author of the legislation adding the sibling relationship exception anticipated that 'use of the new exception "will likely be rare," meaning 'that the child's relationship with his or her siblings would rarely be sufficiently strong to outweigh the benefits of adoption'"].)

4. *Remand Is Necessary for Compliance with ICWA Inquiry Requirements*

ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq. (2023)) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551.) The statute authorizes states to

20

provide "'a higher standard of protection'" to Indian children, their families and their tribes than the rights provided under ICWA.  (*In re T.G.* (2020) 58 Cal.App.5th 275, 287-288; see 25 U.S.C. § 1921.)  In addition to significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.*, at pp. 287-288), ICWA permits an Indian child's tribe to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding (see 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8).

To ensure Indian tribes may exercise their rights in dependency proceedings as guaranteed by ICWA and related state law (see *In re Isaiah W.*, *supra,* 1 Cal.5th at p. 5), an investigation of a child's possible Indian ancestry must be undertaken and, where appropriate, notice provided to interested tribes.  (See § 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child"].)  The duty to inquire "begins with the initial contact" (§ 224.2, subd. (a)) and obligates the juvenile court and child protective services agencies to ask all relevant involved individuals whether the child may be an Indian child.  (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316; § 224.2, subds. (a)-(c).)

Section 224.2, subdivision (b), requires the child protective agency to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (See *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290; Cal. Rules of Court, rule 5.481(a)(1).)  If the court or child protective agency "has

reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child," the court and the Department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e); Cal. Rules of Court, rule 5.481(a)(4).) If the further inquiry "results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; see 25 U.S.C. § 1912(a); § 224.3 [notice under ICWA "shall be provided" if the court, social worker, or probation officer "has reason to know . . . that an Indian child is involved"].)

"'The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families.'" (*In re Rylei S., supra,* 81 Cal.App.5th at p. 317; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 430; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 ["the agency has a duty to gather information by conducting an initial inquiry, where the other party—here the parent . . . has no similar obligation"].)

Here, after Tiffany and Robert both stated they had no Indian ancestry, the Department made no further inquiries to any known extended family member despite having the contact information for several of them.[4] Moreover, in finding ICWA did

---

[4] Welfare and Institutions Code section 224.1, subdivision (c), provides "extended family member" is defined as provided in ICWA. ICWA defines "extended family member," if not separately defined by the law or custom of the Indian child's

22

not apply to the children, the court relied entirely on the parents' responses and made no further ICWA inquiries—not to maternal great-aunt and great-uncle Ronalda or Jesse, who were present at Elizabeth's detention hearing (the initial contact), or to the Department to ensure it complied with its ICWA obligations. As the Department implicitly concedes, much more was required.[5]

tribe, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2).)

The Department's reports indicate the Department had contact information for maternal grandmother Dianna, maternal grandfather Bryant G., maternal uncle Donald G., paternal grandmother Lillian R., paternal cousins Bill B. and Joe P., paternal aunt Cheyenne E. and paternal cousin June L.

[5] In not opposing a remand for ICWA compliance, the Department implicitly recognizes not only that error occurred, but also this division's treatment of ICWA inquiry error. (See, e.g., *In re Antonio R. supra,* 76 Cal.App.5th at p. 436 ["[I]n determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child. In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child—regardless of whether the information ultimately shows the child is or is not an Indian child"].) The question concerning the standard of prejudice under which to evaluate ICWA inquiry error is currently pending in the Supreme Court. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted Sept. 21, 2022, S275578.)

## DISPOSITION

The juvenile court's April 6, 2022 order denying Tiffany's section 388 petition is affirmed. The juvenile court's April 6, 2022 order terminating Tiffany and Robert's parental rights is conditionally affirmed. The matter is remanded to the juvenile court for full compliance with the inquiry and notice provisions of ICWA and related California law, including for the Department to make all reasonable efforts to identify and thereafter interview all extended family members, not just those who have previously been identified, as well as others who have an interest in any of the children, regarding the children's possible Indian ancestry and to submit a report of its interviews or efforts to conduct the interviews to the juvenile court, and for further proceedings not inconsistent with this opinion.


                                        PERLUSS, P. J.

We concur:



SEGAL, J.



FEUER, J.

24