Filed 9/18/24  In re M.J. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re M.J., a Person Coming Under the Juvenile Court Law. | C099984 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.G. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. JD242468) |

Appellants J.G. (mother) and J.J. (father), parents of the minor, appeal from the juvenile court's order terminating parental rights and freeing the minor for adoption. (Welf. & Inst. Code, §§ 366.26, 395.)[1] Appellants contend the juvenile court erred in

---

[1] Undesignated section references are to the Welfare and Institutions Code.

1

relying on a defective adoption assessment in terminating parental rights, and that the juvenile court and the Sacramento Department of Child, Family and Adult Services (the Department) failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA). The Department argues the former claim is forfeited for failure to raise it in the juvenile court and, in any event, both claims lack merit. We will affirm the juvenile court's orders.

BACKGROUND

The minor was detained and dependency jurisdiction was first established by the Placer County Juvenile Court, which sustained amended allegations pursuant to section 300, subdivisions (b) and (j), based on the parents' substance abuse histories and abuse of the minor's half siblings. The minor was placed with maternal aunt Me.G.,[2] who had previously adopted one of the minor's half siblings, Ma.G. Maternal grandmother had legal guardianship of another one of the minor's half siblings, Jo.G. The minor and her half siblings saw each other on a somewhat regular basis for family events. Thereafter, the matter was transferred to the Sacramento County Juvenile Court.

Throughout the dependency proceedings, the parents made little to no progress with reunification services and had minimal, inconsistent visitation with the minor. The juvenile court terminated the parents' reunification services and set the matter for a section 366.26 hearing.

The November 2023 selection and implementation report stated that the minor had four maternal half siblings, three of whom had been removed from mother's care and subsequently adopted out. The report stated that "[o]ne maternal half-sibling is placed under the Court's jurisdiction with the maternal grandmother" and the minor "is placed in a maternal relative['s] home with one adopted half-sibling and has developed a positive

---

[2]    To protect their privacy, we refer to this individual and the minor's half siblings by their initials. (Cal. Rules of Court, rule 8.401 (a).)

2

relationship." It was also noted that the half sibling enjoyed having the minor in the home. The report stated that the minor was "generally adoptable due to her young age, and overall good health and development," and the Department assessed that adoption would be an appropriate permanent plan for the minor.

At the November 17, 2023, section 366.26 hearing, father objected to the Department's recommendation that the juvenile court find the minor adoptable and terminate parental rights. Mother joined in that objection. Neither party presented any witnesses or evidence. The Department informed the court that the recommended findings and orders erroneously indicated that the minor had no siblings. The social worker stated the omission was an oversight on her part and confirmed the minor's sibling, Jo.G., was in the care of maternal grandmother but was not included in the report. The Department noted there was another sibling, J.J., who was not in maternal grandmother's care but was subject to the court's jurisdiction. The social worker confirmed there was appropriate contact between the minor and sibling Jo.G.

The juvenile court found sibling J.J. was under its jurisdiction and, in the absence of an objection from counsel for either mother or father, found that there was insufficient information to determine the nature of the relationship between the minor and J.J., the appropriateness of developing or maintaining that relationship, the frequency and nature of visits between the half siblings, or whether there was any plan to increase sibling visitation and the impact, if any, that would have on the minor's placement and planning. The court further found the minor was likely to be adopted and terminated parental rights, ordering adoption as the permanent plan.

DISCUSSION

I

*Adoption Assessment Report*

Appellants contend, for the first time on appeal, that the juvenile court erred in terminating parental rights by relying on deficiencies in the Department's adoption assessment regarding the minor's sibling relationships.

To the extent appellants claim the applicability of the sibling relationship exception to adoption, they have forfeited that claim by failing to assert it in the juvenile court. (*In re Daisy D.* (2006) 144 Cal.App.4th 287, 291-292; *In re Erik P.* (2002) 104 Cal.App.4th 395, 403; *In re Christopher B.* (1996) 43 Cal.App.4th 551, 558; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501-502.)

Appellants challenge the adequacy of the Department's section 366.26 assessment report, claiming it indicated the minor had four half siblings, one of whom (Jo.G.) was living with the maternal grandmother and one of whom (Ma.G.) was living with the minor at the home of another relative, but gave little information regarding the nature of the relationship between the minor and his sibling J.J. as described in sections 366.21, subdivision (i)(1)(B), and 366.22, subdivision (c)(1)(B). They argue they were prejudiced because their ability to raise the sibling relationship exception was precluded by the "incomplete [adoption] assessment." However, appellants failed to raise the issue of the adequacy of the assessment report in the juvenile court, nor did they object to the juvenile court's acceptance of the report despite stating there was insufficient information to determine various aspects of the relationship between the minor and J.J. Accordingly, appellants have also forfeited their right to raise that issue on appeal. (See *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [failure to object to the adequacy of an adoption assessment]; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-412 [failure to object to the inadequacy of adoption assessment]; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339 [failure to object to the lack of a bonding study].)

4

Finally, appellants claim the above-described issues were preserved for appeal by the juvenile court's statement that there was insufficient information to determine the nature of the relationship between the minor and J.J., the appropriateness of developing or maintaining that relationship, the frequency and nature of visits between them, or whether there was any plan to increase visitation and the impact that would have on the minor's placement. Appellants claim the juvenile court's statement "raised the objection" and "put the Department on notice" of the deficiencies in the assessment report. But appellants did not raise the sibling relationship exception to adoption and the juvenile court made no mention of it. While the Department is tasked with including in its report, inter alia, a review of the amount of and nature of any contact between the minor and his or her siblings since the time of placement, it was appellants' burden to establish an exception to adoption. (*In re Isaiah S.* (2016) 5 Cal.App.5th 428, 437-438; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 809.) As discussed above, appellants offered no evidence to show the sibling relationship exception to adoption applied, they did not request a bonding study or object to the absence thereof, and they did not challenge the adequacy of the adoption assessment report. They failed to meet their burden.

II

*ICWA Compliance*

Appellants contend the Department erred in failing to comply with the ICWA's affirmative and ongoing duty of inquiry by failing to further inquire of the relevant tribes or to fulfill the Cherokee Tribe's request for additional information. Appellants further contend that the juvenile court failed to make an ICWA finding at the section 366.26 hearing. These claims lack merit.

A.    *Factual Background*

The Department identified eight of the minor's relatives: maternal grandmother, maternal aunts Me.G., K.G., and T.C., maternal uncles J.C. and D.C., paternal grandmother, and paternal grandfather. Contact information was provided to the

5

Department for maternal grandmother, maternal aunt Me.G., and the paternal grandparents.

Father claimed possible Indian heritage with the Chippewa or Chickasaw Tribes and directed the social worker to the paternal grandmother to obtain more information. Paternal grandmother reported possible Indian heritage via the paternal great-great-great-great-grandmother who, according to paternal grandmother, was a registered member of an unknown tribe but was not granted tribal membership. Paternal grandfather denied any Indian ancestry, as did mother, maternal aunt Me.G., and maternal grandmother. On April 19, 2023, prior to the transfer of the case to Sacramento County, the Placer County Juvenile Court found the ICWA does not apply.

The Department's June 2023 ICWA compliance report reiterated information previously reported, adding that paternal grandmother denied knowing the name of a specific tribe but stated it "starts with a 'C' and the family lived in Oklahoma." Paternal grandmother reported that none of the paternal relatives were enrolled members in a tribe, and she denied having contact information for any living relative who would have more information regarding possible Indian heritage. Paternal grandfather reiterated his previous denial of Indian heritage. The compliance report detailed further efforts undertaken by the Department to obtain family history information and to identify relevant tribes and their designated agents. The report also indicated that, on May 18, 2023, inquiries via certified mail, e-mail, and facsimile were sent to one Chickasaw Tribe, eighteen Chippewa Tribes, and three Cherokee Tribes. The Chickasaw Tribe and three of the Chippewa Tribes responded that the minor was not eligible for enrollment, and the remaining Chippewa and Cherokee Tribes had yet to respond.

The July 2023 ICWA compliance report stated that three additional Chippewa Tribes responded that the minor was not eligible for enrollment, and the remaining Chippewa and Cherokee Tribes had yet to respond.

6

On July 6, 2023, the juvenile court set the matter for a section 366.26 hearing and continued the ICWA compliance hearing to be heard concurrently therewith.

The August 2023 ICWA compliance report indicated the Department sent follow up correspondence to the tribes that had yet to respond to its earlier inquiries. Of those tribes, seven of the Chippewa Tribes and the Eastern Band of Cherokee Indians responded that the minor was not eligible for enrollment. However, the Cherokee Nation sent a letter dated August 3, 2023, stating the minor "could POSSIBLY be connected to the Cherokee Nation through the paternal grandfather but without a middle name and/or date of birth for [paternal grandfather S.J.], an accurate determination cannot be made." The letter continued: "At this time, the [minor is] NOT an 'Indian Child[]' in relation to the Cherokee Nation as defined in the [ICWA]. Therefore, the Cherokee Nation does not have legal standing to intervene based on the information exactly as provided by you. Any incorrect or omitted information could invalidate this determination." The letter informed the Department that any additional information should be sent in writing.

On August 17, 2023, the juvenile court read and considered the most recent ICWA compliance report and granted the Department's request to continue the ICWA compliance hearing, ordering the Department to "provide required information to the Cherokee Tribe no later than 8/29/23 for adequate time to respond."

The September 2023 ICWA compliance report stated the Department contacted paternal grandfather and obtained his birthdate and middle name and, on August 22, 2023, provided that information via facsimile and certified mail to the Cherokee Nation. That same day, the Cherokee Nation responded that the minor was not an Indian child and that no direct biological relatives of the minor were found.

At the ICWA compliance hearing on September 14, 2023, after considering the most recent ICWA report, the juvenile court found the Department exercised due diligence in completing further inquiry as required by section 224.2, subdivision (e), there was no reason to know the minor was an Indian child, and the ICWA did not apply.

7

On November 2, 2023, the juvenile court asked maternal grandmother whether she had any possible Indian heritage. Maternal grandmother responded that she did not.

At the contested section 366.26 hearing, the juvenile court again inquired of maternal grandmother about any Indian heritage. Maternal grandmother responded, "No." The court made no new or different ICWA findings.

B.      *Applicable Law*

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) "Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA; [Citation]), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125 (*Dezi C.*); § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)

Section 224.2 creates three distinct duties regarding the ICWA in dependency proceedings. The first is relevant here. "First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the

8

child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b)(2).)

Due to changes in California law, agencies now have broader duties of inquiry and documentation (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(5)), and courts have been tasked with determining how to assess error when an agency fails to discharge those duties. We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. (*H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 961; *Dezi C., supra*, 16 Cal.5th at p. 1134.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C.*, at p. 1141.) " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101-1102.) The California Supreme Court has recently held that "an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [California Rules of Court,] rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Dezi C.,* at p. 1136.)

Here, there was substantial evidence upon which the juvenile court could base its finding that the Department conducted an appropriate and sufficient further inquiry and that the ICWA did not apply. It does not appear that appellants dispute that further inquiry was unnecessary as to mother and her extended relatives, all of whom repeatedly denied any Indian ancestry. Appellants' challenge is solely as to the paternal extended relatives, specifically, father's claim of possible Indian heritage with the Chippewa or Chickasaw Tribes and paternal grandmother's claim of possible Indian heritage through a relative who was a registered member but not a tribal member, of an unknown tribe

whose name "starts with a 'C.' " This information was obtained through the Department's initial contact with the minor's family as required by section 224.2, subdivisions (a) and (b), and gave the Department a reason to believe the minor may be an Indian child, triggering the Department's duty of further inquiry. (§ 224.2, subd. (e); see also Cal. Rules of Court, rule 5.481(a)(4); *Dezi C.*, *supra*, 16 Cal.5th at pp. 1131-1132.)

The Department's compliance with its duty of further inquiry was evidenced by ICWA compliance reports detailing its efforts to obtain information relevant to the ICWA. For instance, the June and July 2023 reports noted interviews of and contacts with appellants and extended family members, including father, who informed the Department that paternal grandmother would have more information; paternal grandmother, who affirmed possible Indian ancestry and identified paternal great-great-great-great-grandmother E.M. as a registered member of an unknown tribe, and who denied having any contact information for any living paternal relatives who might have more information; and paternal grandfather, who denied any Indian heritage.

Appellants claim the Department failed to produce substantial evidence of its further inquiry efforts and provided no proof of what was provided to the tribes. We disagree. The Department's ICWA compliance reports detailed the family history information obtained through those interviews and contacts with extended family members, as well as tribal and designated agent information obtained from the Bureau of Indian Affairs. The reports stated the name of each tribe and its designated agent to whom the Department sent "the ICWA Family Tree with all known relatives' information" and a letter with the minor's information requesting confirmation of whether the minor was an Indian child for purposes of the ICWA. Finally, the reports set forth the result of the Department's contacts with each tribe and, if applicable, the responses from those tribes. The August 2023 ICWA compliance report reflected the Department's efforts to follow up with tribes that had not yet responded to its earlier

inquiries, and the September 2023 report set forth additional information obtained by the Department.

Appellants argue the Department also failed to provide proof of what was provided in response to the Cherokee Nation's request for further information. The record proves otherwise. The Department's August 2023 report sets forth the request by the Cherokee Nation for further information regarding the paternal grandfather's middle name and date of birth. The September 2023 report notes the Department contacted paternal grandfather and obtained his middle name and birthdate and provided that information to the Cherokee Nation. The report also includes the Cherokee Nation's response to that additional information.

Lastly, we reject appellants' claim that the juvenile court erred when it made no specific ICWA finding at the section 366.26 hearing despite having done so at a prior hearing. As appellants concede, the juvenile court made a finding at the ICWA compliance hearing on September 14, 2023, that the ICWA did not apply. Section 224.2, subdivision (i) sets forth no requirement that a juvenile court's finding of "proper and adequate further inquiry and due diligence" and no reason to know the minor is an Indian child must be expressly made at the selection and implementation hearing. The only requirement is that the court "shall reverse its determination if it subsequently receives information providing reason to believe" the minor is an Indian child and order the agency to conduct further inquiry pursuant to section 224.3. (§ 224.2, subd. (i)(2).)

Here, the juvenile court's finding was based on the September 2023 ICWA compliance report containing the most recent information regarding the Department's inquiry attempts and the tribes' responses, including the information requested from and provided to the Cherokee Nation regarding the paternal grandfather's birthdate and middle name. Neither the Department nor the court received any subsequent information providing a reason to believe the minor was an Indian child. The Department's November 2023 selection and implementation report stated the ICWA "does not apply"

11

and noted the juvenile court's September 14, 2023, finding without any new or additional information. Appellants provide no authority, and we are aware of none, that support the proposition that the juvenile court was required to make another express ICWA finding at the selection and implementation hearing. The September 14, 2023, ICWA finding complied with the requirements of section 224.2, subdivision (i). In fact, the juvenile court is assumed to have adopted its September 2023 determination that the ICWA did not apply (see, e.g., *In re Isaiah W.* (2016) 1 Cal.5th 1, 10 [order terminating parental rights "necessarily premised on a *current* finding" ICWA did not apply]; *id.* at pp. 6, 9, 14-15).

Based on this record, there was substantial evidence to support the juvenile court's conclusion that the Department complied with its duty of further ICWA inquiry, there was no reason to know the minor was an Indian child, and the ICWA did not apply.

### DISPOSITION

The juvenile court's orders are affirmed.

_____\s\_____,
Krause, J.

We concur:

_____\s\_____,
Duarte, Acting P. J.

_____\s\_____,
Mesiwala, J.