Filed 11/19/24  In re Marley F. A2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re MARLEY F., a Person Coming Under the Juvenile Court Law. | B334790 (Los Angeles County Super. Ct. No. DK10468C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CYNTHIA F., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore. Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendant and appellant Cynthia F. (mother) appeals from the juvenile court's order terminating her parental rights to Marley F. (minor, born Jan. 2014). She contends that the court erred in declining to apply the sibling-relationship exception to adoption set forth in Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(v).[1]

We affirm.

## BACKGROUND

I. *The Family*

In addition to minor, mother has five other children: Madelyn F. (Madelyn, born Oct. 2006), Cruz B. (Cruz, born Nov. 2007), E.F. and A.F. (the twins, born Jan. 2015), and M.F. (born Oct. 2019). Only minor is the subject of this appeal.

Minor's father, William L. (father), is not the father of any of mother's other children. Father is not a party to this appeal.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

II. *Referral*

The family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in January 2015 after the twins were born premature and mother tested positive for amphetamines and methamphetamines.

III. *Exercise of Dependency Jurisdiction*

In March 2015, DCFS filed a juvenile dependency petition regarding minor, Madelyn, Cruz, and the twins, followed by a first amended dependency petition.  As relevant to minor, in July 2015, the juvenile court sustained counts under section 300, subdivision (b)(1) (failure to protect), pertaining to mother's and father's substance abuse and father's mental health issues.  The court declared minor a dependent of the court, removed her from father's custody, and placed her with mother.[2]

IV. *Family Maintenance Period*

Over the next three years, the juvenile court retained its jurisdiction while DCFS supervised the family and offered various family reunification services.  But the family continued to struggle.  In August 2016, DCFS received information that Cruz made comments about killing Madelyn and animals.  A temporary safety plan was implemented to keep Cruz from being alone with other children and accessing sharp objects.  In November 2017, an immediate response referral was generated after Madelyn came to school with scratches and bruises on her body and reported that she had gotten into a fight with mother.  Madelyn began exhibiting aggression toward mother and

---

[2]     Madelyn, Cruz, and the twins were also declared juvenile dependents but remained placed with mother.

3

admitted to hitting her.  Often triggered by Madelyn, Cruz would hit, kick, and throw objects in the home.

V. *Detention; Subsequent and Supplemental Petitions*

On October 10, 2018, DCFS detained minor, Madelyn, Cruz, and the twins from mother.  Minor was placed with her paternal aunt P.L. (paternal aunt); Madelyn and Cruz were placed with their paternal grandmother; and the twins were placed in foster care.

On October 12, 2018, DCFS filed a subsequent petition under section 342 and a supplemental petition under section 387 on behalf of minor, Madelyn, Cruz, and the twins.  The subsequent petition alleged that mother had "created a detrimental and endangering home environment for" minor and her siblings by permitting mother's male companion, who had displayed violent behavior, to reside in the family home.  The supplemental petition alleged that the previous disposition permitting minor and her siblings to remain at mother's home had been ineffective in protecting them, evidenced by mother's missed drug tests.

The juvenile court sustained the subsequent and supplemental petitions on November 5, 2018.  At a contested disposition hearing on December 10, 2018, the court removed minor and her siblings from mother and ordered DCFS to provide family reunification services.  Mother appealed from the December 10, 2018, dispositional orders with review of the underlying findings in the subsequent and supplemental petitions.  We affirmed.  (*In re Madelyn F.* (Oct. 29, 2019, B294896) [nonpub. opn.].)

4

VI.  *Family Reunification Period*

In June 2019, DCFS reported that minor continued to reside with paternal aunt, with whom she appeared bonded. According to paternal aunt, minor did well academically and socially at school and was well-adjusted at home.  Also in June 2019, the juvenile court ordered weekend overnight visits for mother with her children, including minor.  At least three of these visits were terminated early because of the presence of mother's male companion, in violation of a restraining order.  The court subsequently reverted mother's visits to monitored.

Mother gave birth to M.F. in October 2019.  M.F. was detained and placed with a family friend, G.M.  The twins were later moved to the same home as M.F.

As of December 2019, minor lived with paternal aunt and paternal grandmother S.L. (paternal grandmother).  Minor attended mother's two-hour visits with the twins once per week or every other week.  In April 2020, minor expressed her wish to remain living with paternal aunt and paternal grandmother and to visit with mother and the twins.

VII.  *Termination of Family Reunification Services*

Finding that the progress made by mother and father was not substantial, the juvenile court terminated family reunification services on September 1, 2020.

VIII.  *Permanency Planning Period*

During the permanency planning period, minor continued to reside with paternal aunt and the paternal grandparents. DCFS reported that minor was "thriving" in her placement; she had no behavioral problems at home or school.  Minor was observed to be happy and reported that she felt "'loved[.]'"  She

5

wanted to remain living with paternal aunt and the paternal grandparents.

Paternal aunt reported that she had always participated in minor's life; she was very attached to minor and loved minor as her own child.  Paternal aunt did not want minor to "grow up 'in the system because of her parents[]'" or "to be exposed to instability or drug usage."  Although paternal aunt had originally expressed interest in obtaining legal guardianship of minor, by January 2022 she wanted to pursue adoption instead in order "to provide the most permanent plan for [minor]."  Paternal aunt stated, "'[Minor] is now at an age where she understands that she is not living with her mom and she understands why.  I want her to know she will always be with us and that she does not have to worry about court.'"

Mother maintained sporadic visitation with minor.  At a hearing on May 12, 2021, counsel for minor and mother's other children stated that the siblings had not "been seeing each other very often" and asked that DCFS make best efforts to arrange sibling visits at least once per month.  The juvenile court ordered DCFS "to facilitate sibling visits and make efforts to assist with transportation for such visits."

By May 2022, sibling visits were taking place twice per month.  Without specifying any particular child's feelings, DCFS reported that "[o]verall the children look forward to their sibling visits and have maintained their close relationship."  The caregiver of the youngest siblings (the twins and M.F.), however, demonstrated a lack of interest in facilitating the sibling visits, cancelled them frequently, and referred to them as "a waste of time."  In contrast, paternal aunt reported that she valued minor's connections to her siblings and was willing to continue

6

regular contact with them even after adoption. Paternal aunt reported no problems coordinating these visits with Madelyn and Cruz's caregiver.

Madelyn expressed concern about not being able to see the twins and M.F. if they were adopted by their caregiver. Madelyn stated that she and Cruz knew they would still see minor because paternal aunt and paternal grandmother viewed the children as all part of the same family. Madelyn referred to minor's paternal relatives as "'really good people[.]'"

At a hearing on November 1, 2022, the juvenile court ordered the twins and M.F. to remain in their current placement. Through their counsel, Madelyn and Cruz asserted the sibling-relationship exception to adoption as to the twins and M.F. Counsel for the twins and M.F. objected to Madelyn and Cruz's participation in the permanency planning for their younger siblings. The court ordered a bonding study to assess the bond between Madelyn and Cruz with the twins and M.F. Minor was expressly excluded from the bonding study. The court explained: "I don't think it's necessary for [minor]. No one's arguing that [minor]'s placement be disturbed or that [s]he be taken from that home and placed anyplace else."

The resultant bonding study, which did not include minor, concluded that adoption would likely undermine the sibling relationship with the potential for both positive and negative effects. Adoption of the twins and M.F. by their caregivers "outweigh[ed] long term benefits inherent in reuniting the siblings in one home."

At a hearing on October 30, 2023, minor's counsel joined with DCFS in recommending adoption for minor. Counsel for the twins and M.F. agreed with DCFS's recommendation of legal

guardianship for those children with their current caregivers. The juvenile court found that the plan of adoption for minor and the plan of legal guardianship for Madelyn,[3] Cruz, the twins, and M.F. was appropriate.

IX. *Termination of Parental Rights*

The section 366.26 hearing was held on November 29, 2023. Minor's counsel did not "believe there [were] any impediments to adoption" and joined in DCFS's recommendation of adoption. Mother's counsel requested a continuance for mother to be present. Mother's counsel objected to the termination of parental rights and "ask[ed] that the sibling bond exception apply."

Finding that no exception to adoption applied, the juvenile court terminated mother and father's parental rights to minor and designated paternal aunt as minor's prospective adoptive parent. The court found that there "w[ould] not be a substantial interference with the relationship between" minor and her siblings. Further, "any risk of loss of ongoing contact between" minor and her siblings was "outweighed by the long-term benefit . . . from the permanency and stability of adoption."

X. *Appeal*

Mother's timely appeal ensued.

**DISCUSSION**

Mother's sole contention on appeal is that the juvenile court erred in finding that the sibling-relationship exception to adoption did not apply.

---

[3]     The juvenile court later declared 17-year-old Madelyn's permanent plan to be a planned permanent living arrangement in anticipation of nonminor dependent status.

8

I. *Relevant Law*

If the juvenile court finds by clear and convincing evidence at the section 366.26 hearing that a child is likely to be adopted, "the court shall terminate parental rights and order the child placed for adoption" unless, as relevant here, it "finds a compelling reason for determining that termination would be detrimental to the child due to one or more" enumerated exceptions. (§ 366.26, subds. (c)(1) & (c)(1)(B); see also *In re Caden C.* (2021) 11 Cal.5th 614, 630–631 (*Caden C.*).) "'[T]he statutory exceptions merely permit the court, in exceptional circumstances [citation], to choose an option other than the norm, which remains adoption.'" (*In re Celine R.* (2003) 31 Cal.4th 45, 53; see also *In re I.E.* (2023) 91 Cal.App.5th 683, 690 ["'"[B]ecause a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement[]"'"].)

The exception at issue here—the sibling-relationship exception—applies if "termination would be detrimental to the child" because "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)

"The purpose of this exception is to preserve long-standing sibling relationships that serve as 'anchors for dependent children whose lives are in turmoil.' [Citation.] The sibling relationship exception contains 'strong language creating a heavy burden for the party opposing adoption.' [Citation.]" (*In re Isaiah S.* (2016) 5 Cal.App.5th 428, 437; see also *In re D.O.* (2016) 247 Cal.App.4th 166, 174 ["reiterat[ing] the rarity with which the sibling relationship exception applies"].)

II. *Standards of Review*

We review the juvenile court's underlying factual findings regarding the application of the sibling-relationship exception to adoption for substantial evidence. (*In re D.O.*, *supra*, 247 Cal.App.4th at p. 174.) We apply "the abuse of discretion standard to the court's weighing of competing interests." (*Ibid.*; see also *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315.)

III. *The Juvenile Court Did Not Err*

Applying these legal principles, we find no error in the juvenile court's conclusion that the sibling-relationship exception to adoption did not apply.

Substantial evidence supports the juvenile court's finding that the termination of parental rights would not substantially interfere with minor's relationship with her siblings. By the time of the section 366.26 hearing in November 2023, nine-year-old minor had not lived with Madelyn, Cruz, or the twins for over five years. Minor had *never* lived with M.F. Accordingly, the sibling relationship was not marked by any recent experience of living in the same home.

To the extent that minor nevertheless maintained strong bonds with her siblings as mother asserts, the record does not reflect that adoption would be disruptive. Paternal aunt—

minor's prospective adoptive parent—was supportive of minor's continued relationship with her siblings and had demonstrated her commitment to facilitating sibling visits. Madelyn expressed no concern about being able to continue her relationship with minor postadoption because, as Madelyn explained, minor's paternal aunt and paternal grandmother viewed minor and her siblings as all part of the same family. While, at times, the caretaker of the twins and M.F. placed impediments on the ability of the siblings to visit and maintain their relationships, mother does not explain how the attitude or efforts of that caretaker would be impacted by minor's adoption.

We also find no abuse of the juvenile court's discretion by concluding that the risk of interference with the sibling relationship was "outweighed by the long-term benefit . . . from the permanency and stability of adoption." Minor had spent the majority of her life in the stable and loving care of paternal aunt. Minor was thriving in her placement and, despite the challenging circumstances of her early life, exhibited no behavioral problems at home or at school. Minor repeatedly expressed her desire to remain living with her paternal relatives. Paternal aunt loved minor as if she was her own child and was committed to providing her with the greatest level of permanency through adoption. There is nothing arbitrary, capricious, or patently absurd about the court prioritizing the substantial benefits to minor provided by adoption by paternal aunt over an uncertain future that might include more sibling contact. (See *Caden C.*, *supra*, 11 Cal.5th at p. 641 ["A court abuses its discretion only when ""the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination[]"""].)

11

Without any citation to authority, mother contends that minor's best interests would be served by placing her "in a legal guardianship with the relative caretaker" because adoption by paternal aunt would mean that minor "would not have a chance to grow up with her siblings." This argument ignores the statutory preference for adoption over guardianship (*San Diego County Dept. of Pub. Welfare v. Superior Court* (1972) 7 Cal.3d 1, 9; *In re M.V.* (2023) 87 Cal.App.5th 1155, 1186) and the dearth of evidence in the record suggesting that any viable option existed for minor to live in the same home as her siblings if she was not adopted.

## DISPOSITION

The order terminating parental rights is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
LUI

_____, J.
HOFFSTADT